Filed 4/26/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| In re NELSON B., a Person Coming Under the Juvenile Court Law. | |
|---|---|
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY, Plaintiff and Respondent, v. NELSON B., Defendant and Appellant. | A136240 (Alameda County Super. Ct. No. OJ12018639) |

The Alameda County Social Services Agency (the Agency) filed a petition under Welfare and Institutions Code[1] section 300, subdivision (b) (section 300(b)) alleging the failure or inability of appellant Nelson B.'s parent or legal guardian to supervise or protect him adequately. Appellant, then age 16, was a runaway living with his girlfriend's family in Oakland. He was born in Honduras and entered the country illegally on his own in 2009. United States Immigration and Customs Enforcement (ICE) apprehended appellant and placed him in the custody of his aunt in Maryland where he lived and attended school for at least six months before running away to California in 2011. After learning of appellant's connection to Maryland, the Agency recommended the petition be dismissed for lack of subject matter jurisdiction. The trial court so ordered, and this appeal followed. We affirm the dismissal.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

# I. BACKGROUND

Appellant came to the United States illegally from Honduras sometime in 2009, at the age of 13. He initially lived with his paternal aunt, Maria V., in the Washington, D.C. area but he had conflicts with her and apparently ran away in 2010.[2] He was picked up by ICE in Texas in the summer of 2010, and put in a shelter operated by Southwest Key Programs, a private, nonprofit providing services for unaccompanied and undocumented minors.[3] Appellant was reunified with his aunt in Laurel, Maryland, after she signed a sponsorship agreement and affidavit of support in July 2010, pursuant to section 462 of the Homeland Security Act of 2002. (6 U.S.C. § 279(b).) In the affidavit, Maria V. stated under penalty of perjury she intended to provide "legal representation, economic support, education, schooling, and everything deemed necessary during minor's stay in the United States." Under the sponsorship agreement, ORR agreed to place appellant into Maria V.'s "care and custody" in return for her legally enforceable agreement to, among other things, "[p]rovide for the physical, mental, and financial well-being of the minor," to ensure the minor's presence at future ICE proceedings pertaining to him, and to obtain written permission from ICE if she decided to transfer appellant's custody to another person. Because Maria V. was not a member of appellant's immediate family, she was also required by ORR to obtain "an official, notarized letter of consent from the minor's parents granting custody of the minor."

---

[2] There are conflicting indications in the record as to whether appellant initially lived with his aunt or was placed with her for the first time in 2010, after being detained by ICE in Texas. Because appellant stated he lived with his aunt for two years before running away a second time in March 2011, and that he completed the 9th grade and part of the 10th grade in Maryland, it seems more likely he lived with her for some period of time in 2009 and 2010 before being detained in Texas in mid-2010. He thereafter lived with her again for approximately eight months, from July 2010 until March 2011.

[3] See *U.S. v. Nahun-Torres* (N.D.Cal. 2013) 2013 WL 140047, page *2 (under a contract with the U.S. Dept. of Health and Human Services, Office of Refugee and Resettlement (ORR), Southwest Key Programs houses juveniles in custody incident to an alleged immigration violation).

Appellant ran away again in March 2011, and came to California by himself. He initially lived with friends until he met his 18-year-old girlfriend in the summer of 2011, and began living with her and her mother in Oakland sometime after that. He came to the attention of the Agency in March 2012, when he got into a fight with an adult male at the house and the police were called. After learning appellant was 16 years old, the police took him into protective custody and referred him to the Alameda County Children's Assessment Center. Appellant's girlfriend was seven months pregnant with his child at the time of this event. On March 22, 2012, a petition was filed pursuant to section 300(b) alleging appellant was at substantial risk of serious physical harm or illness as a result of the failure or inability of his parent or legal guardian to supervise or protect him adequately. He was initially placed in a temporary foster home by the Agency. At the detention hearing, the court agreed with the Agency's recommendation the minor be detained while the Agency continued its investigation.[4]

On April 1, 2012, appellant told his foster parent he was going out to visit his girlfriend, and never returned home. He remained unaccounted for until April 5, 2012, when he was arrested in San Francisco for selling cocaine. A section 602 petition was filed in San Francisco City and County charging appellant with a felony drug count. At appellant's juvenile court hearing in San Francisco on April 12, he admitted to a reduced felony charge of being an accessory after the fact to the commission of a felony. The judge ordered the minor's criminal case transferred to Alameda County for disposition, and the minor was placed at the Alameda County Juvenile Justice Center (juvenile hall). On May 1, 2012, a disposition hearing was held on the section 602 petition in Alameda County. The probation department recommended the court find appellant's legal residence to be in Prince George's County, Maryland because "his legal guardian lives in

---

[4] The Agency subsequently contacted appellant's mother in Honduras. She stated she had six children along with appellant. She was not married to appellant's father and had never been married. The father was an alcoholic who had abandoned the family and had never provided support. She did not know where he was. He had tried to strangle one of the children, and that is why they separated. Appellant stated he did not know the whereabouts of his father, but was in regular telephone contact with his mother.

Maryland," and he had no other family in the United States or ties to Alameda County. The department recommended the matter be transferred back to San Francisco City and County for disposition. The court declined to order a transfer. It ordered appellant detained in juvenile hall, and continued disposition of the delinquency matter pending a section 241.1 hearing,[5] which was continued until May 23, 2012.

In an addendum report filed on May 16, Agency social worker, Kim Yancy, recommended the jurisdiction hearing on appellant's section 300 petition, then scheduled for May 17, be continued until after the section 241.1 proceedings were resolved. Yancy provided documentation in the addendum report that appellant's aunt in Maryland had initiated guardianship proceedings for appellant in Prince George's Circuit Court in Maryland in 2010 or 2011, but the case did not advance due to his sudden departure from his aunt's home in early 2011. The attorney in the guardianship proceeding submitted a letter stating, "Due to [appellant's] departure and absence from the State of Maryland for approximately a year now, the State of Maryland did not retain jurisdiction over [him] and we were unable to complete the Guardianship process." The addendum report also attached copies of the sponsorship agreement, affidavit of support, and other documents signed in 2010 by appellant's aunt when the Department of Homeland Security released him to her custody. Over the objection of appellant's trial counsel, the jurisdiction hearing was continued in order to trail the section 241.1 hearing set for May 23, 2012.

In a section 241.1 report jointly submitted by the probation department and the Agency on May 22, 2012, the agencies recommended the court find appellant's residence was Prince George's County, Maryland and the matter be transferred to the juvenile court in that county. The report cited the documents and information pertaining to Maria V.'s sponsorship agreement with the Department of Homeland Security as the basis for the agencies' conclusion appellant's legal residency was in Maryland, not California. In a further memorandum to the court on May 22, 2012, the probation department requested

---

[5] In cases where a minor appears to come within the description of both section 300 and section 601 or 602, section 241.1 provides a procedure for determining which status will serve the best interests of the minor and the protection of society.

appellant be detained in juvenile hall for release to ICE. Probation advised it had contacted ICE about appellant, and ICE had sent an immigration detainer requesting appellant be held in custody for 48 hours. At the section 241.1 hearing on May 23, the court ordered appellant to remain in juvenile hall if ICE did not pick him up, and continued the disposition hearing until May 31. On May 24, appellant was released from juvenile hall into ICE's custody, and taken to an ORR facility in Seattle, Washington.

In a second addendum report submitted in connection with the May 31 jurisdiction hearing, the Agency recommended the petition be dismissed for lack of subject matter jurisdiction. The report noted appellant was in the custody of ICE in Washington, and had an immigration hearing set for July 12, 2012 in Baltimore, Maryland, having missed his first immigration hearing which had been set for January 2012 in Baltimore due to running away from the home of his immigration sponsor. At the hearing on May 31, the Agency argued: "[Appellant's aunt] had to sign an affidavit promising to support him and to ensure his presence at custody hearings. He is not in custody and he has no legal connection to Alameda County. He has a pregnant girlfriend and he was living with her family, but legally his mother is in Honduras and his custodian is in Maryland, and he is in the custody of the Immigration Service. [¶] There are a variety of reasons why it should be dismissed." Appellant's counsel objected to dismissal and argued appellant was entitled to an evidentiary hearing on the issue.[6] Counsel advised he intended to present evidence appellant suffered abuse or neglect in Honduras and that his aunt does not have legal custody of him, including cross-examining social worker Yancy about (1) information she had concerning abuse or neglect, (2) Yancy's contacts with appellant's mother, and (3) whether the court did have jurisdiction. The court agreed to

---

[6] Appellant sought jurisdiction because he hoped to obtain "Special Immigrant Juvenile" findings from the juvenile court, as provided for in the federal Immigration and Nationality Act. (See 8 U.S.C. § 1101 et seq.) "These provisions create a path for abused, neglected and abandoned unaccompanied minors to become lawful permanent residents of the United States." (*In re Y.M.* (2012) 207 Cal.App.4th 892, 910.)

5

schedule an evidentiary hearing, but advised it would not admit evidence it considered extraneous to the jurisdictional issue.

Prior to the contested hearing on June 20, 2012, appellant's trial counsel submitted a hearing statement in which he stated his intention to call Yancy as his only witness, and served a subpoena for her appearance. The Agency responded with a motion in limine to, among other things, limit the testimony appellant could seek from Yancy. The motion stated: "Ms. Yancy was the worker assigned to this matter until May 21, 2012, at which time the case was reassigned. As such, Ms. Yancy should not be permitted to testify to events relating to this case that occurred after that date. Furthermore, Ms. Yancy should not be permitted to testify to facts that are not related to the issue of jurisdiction." The Agency argued the only relevant facts were whether appellant was physically present in Alameda County, whether he was in the custody of the Agency, and whether he was a legal resident of Alameda County, all questions which could only be answered in the negative, according to the Agency. The Agency maintained having to bring Yancy in to testify would also have been prejudicial because Yancy was not in agreement with the Agency as to matters having nothing to do with the jurisdictional issue. The Agency argued it would confuse and prejudice the proceedings to allow that irrelevant matter to be brought up.

At the hearing on June 20, appellant's counsel argued the court had subject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), which has been adopted in California in Family Code section 3400 et seq., because California would be considered appellant's "home state" for purposes of the statute. (Fam. Code, § 3421, subd. (a)(1).) Counsel sought to cross-examine social worker Yancy in part to establish appellant's contacts with Alameda County were sufficient to establish jurisdiction under the UCCJEA. The court held Yancy's testimony could not support a finding of subject matter jurisdiction in California, and dismissed the section 300(b) petition without prejudice for lack of subject matter jurisdiction. The court explained its ruling as follows: "I don't believe factually that this is [appellant's] home state. He ran away from the east coast. He was living with his aunt. She had

6

custody of him.  She signed all of the papers saying that she would be his custodian.  He ran away.  He meets a nice girl, got her pregnant, was living with her family.  That doesn't make California his home state.  It just doesn't.  So factually I find that this is not his home state.  I don't believe this Court has jurisdiction over this issue."

This timely appeal followed.

## II.  DISCUSSION

Appellant contends the juvenile court erred in determining it lacked subject matter jurisdiction under the governing provisions of the UCCJEA, and seeks reinstatement of his dependency case on that basis.  He argues in the alternative he was erroneously denied the right to cross-examine social worker Yancy on issues relevant to subject matter jurisdiction in violation of his right to due process, and seeks reversal of the dismissal order and remand for a new jurisdiction hearing.

### A.  *Applicable Law*

"The UCCJEA is the exclusive method in California to determine the proper forum in child custody proceedings involving other jurisdictions.  [Citation.]  A dependency action is a ' "child custody proceeding" ' subject to the UCCJEA.  [Citations.]  The purposes of the UCCJEA in the context of dependency proceedings include avoiding jurisdictional competition and conflict, promoting interstate cooperation, litigating custody where child and family have closest connections, avoiding relitigation of another state's custody decisions, and promoting exchange of information and other mutual assistance between courts of other states."  (*In re Jaheim B.* (2008) 169 Cal.App.4th 1343, 1348.)

Family Code section 3421 provides:  "(a) Except as otherwise provided in Section 3424, a court of this state has jurisdiction to make an initial child custody determination only if any of the following are true: [¶] (1) *This state is the home state of the child on the date of the commencement of the proceeding*, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state. [¶] (2) A court of another state does not have jurisdiction under paragraph (1), or a court of the home

7

state of the child has declined to exercise jurisdiction on the grounds that this state is the more appropriate forum under Section 3427 or 3428, and both of the following are true: [¶] (A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence. [¶] (B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships. [¶] (3) All courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 3427 or 3428. [¶] (4) *No court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3). [¶] (b) Subdivision (a) is the exclusive jurisdictional basis for making a child custody determination by a court of this state. [¶] (c) Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination.*"[7]  (Italics added.)

The UCCJEA defines "home state" as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. . . . A period of temporary absence of any of the mentioned persons is part of the period." (Fam. Code, § 3402, subd. (g).)  A "person acting as a parent" is defined as "a person, other than a parent, who: (1) has physical custody of the child or has had physical custody for a period of six consecutive months, including any temporary absence, within one year immediately before the commencement of a child custody proceeding; and (2) has been awarded legal custody by a court or claims a right to legal custody under the law of this state." (Fam. Code, § 3402, subd. (m).)

---

[7] Family Code section 3424 provides for temporary emergency jurisdiction in specified circumstances that do not exist in this case.  (See Fam. Code, § 3424, subd. (a).)  The parties agree section 3421, subdivision (a) controls here.  They disagree over whether jurisdiction exists in California under section 3421, subdivision (a)(4).

8

We are not bound by the juvenile court's findings regarding subject matter jurisdiction, but rather independently reweigh the jurisdictional facts. (*In re Jaheim B.*, *supra*, 169 Cal.App.4th at p. 1348.)

**B.** *Analysis of Jurisdictional Facts*

In the trial court, appellant's counsel contended California was appellant's "home state" under Family Code section 3421, subdivision (a)(1). He argued appellant was living with family friends in Oakland who were acting as his parents when this proceeding commenced on March 22, 2012. Appellant pursues a different theory in this court. He contends California has subject matter jurisdiction as a matter of default under section 3421, subdivision (a)(4), because neither California nor any other state or country would have jurisdiction under the criteria specified in paragraphs (1), (2), or (3) of subdivision (a). The Agency maintains subdivision (a)(4) is inapplicable because Maryland in fact has subject matter jurisdiction under the criterion specified in subdivision (a)(1). According to the Agency, appellant's aunt qualified as a "person acting as a parent" for purposes of the "home state" definition, and appellant's unauthorized relocation to California in March 2011 cannot divest her of that status. We agree with the Agency.

As an initial matter, appellant correctly points out Honduras does not qualify as his home state because he was not living there for the six-month period preceding the filing of the dependency petition in this case. We disagree, however, with his further contention Maryland must be ruled out as his home state "[f]or the same reason." In our view, Maryland would have jurisdiction under Family Code section 3421, subdivision (a)(1) because it was appellant's home state on or within six months before the date this proceeding commenced. Appellant's aunt qualifies as a "person acting as a parent" for purposes of the "home state" definition in section 3402, subdivision (m), and he lived with her in Maryland for at least six consecutive months. Although appellant had run away to California by the time this proceeding commenced, his absence from Maryland without his aunt's permission after March 2011 was a "temporary absence" for purposes of section 3402, subdivision (g), at least until appellant was returned to the

custody of ICE on May 24, 2012, and the decision was made not to reunify him with his aunt. Thus, Maryland was appellant's "home state" for purposes of the UCCJEA because appellant lived with a person acting as a parent in Maryland for more than six consecutive months immediately before the commencement of this proceeding, not counting the period of his temporary absence after March 2011.[8]

Appellant's aunt qualifies as a "person acting as a parent" under section 3402, subdivision (m) because she (1) is not appellant's parent; (2) had physical custody of appellant for six consecutive months which, not counting the period of his unauthorized absence from Maryland, was within one year immediately before the commencement of this proceeding; and (3) claimed a right to legal custody by initiating a guardianship proceeding in Maryland. Appellant was released to his aunt's custody by ICE on the condition he remain in her care and custody. She promised to provide economic support, education, schooling, and for his physical, mental, and financial well-being during his stay in the United States. While the aunt's sponsorship agreement and affidavit of support did not give her legal custody, she did have physical custody of appellant, defined in section 3402, subdivision (n) as "physical care and supervision," for a period of six consecutive months, and such custody would have continued to within one year before commencement of this proceeding—at least until appellant's ICE hearing scheduled for January 2012—but for appellant's decision to leave Maryland without her knowledge or permission. Further, by initiating guardianship proceedings, also interrupted by appellant's unauthorized departure from Maryland, appellant's aunt was claiming a right to legal custody.

---

[8] Appellant's three-year absence from Honduras at the time of commencement of these proceedings cannot be considered a temporary absence from Honduras for purposes of the "home state" definition because his mother expressly or tacitly approved of his staying in the United States. Appellant was in frequent contact with his mother. There is no indication in the record she wanted him to return to Honduras. In fact, when ICE took custody of appellant in Texas, his mother provided her consent for appellant's aunt to take custody of him rather than demand he be returned to Honduras. Appellant told the Agency his mother wanted him to stay in the United States with his girlfriend's parents.

Appellant left Maryland suddenly and without notice to his aunt, apparently because he was unwilling to accept her supervision. He did not inform her of his whereabouts, and did not assist the Agency in finding contact information for her. When contacted by the Agency, appellant's aunt expressed willingness to take him back. We agree with the trial court appellant cannot make California his home state by running away from Maryland. He is not an adult who can choose his state of residence. This is doubly true here where appellant was not even authorized to be anywhere in the country except in the physical custody of his sponsor or ORR. With the exception of temporary emergency jurisdiction (Fam. Code, § 3424), the UCCJEA bases jurisdiction on the residence and conduct of the persons having custody of the minor, not on the minor's unauthorized travels.

Appellant's situation is analogous to cases in which a parent has removed a child to another state without legal authorization. Some states applying the UCCJEA consider the period of time following a minor's unauthorized removal as a temporary absence from the state. (See, e.g., *Matter of Felty v. Felty* (N.Y.App.Div. 2009) 882 N.Y.S.2d 504, 509 [when a parent wrongfully removes a child from a state, the time following removal is considered a temporary absence from the state]; *Duwyenie v. Moran* (Ariz.App. 2009) 207 P.3d 754, 756–757 [father's unauthorized and arguably criminal conduct in removing minor to another state did not affect Arizona's subject matter jurisdiction under UCCJEA]; *Freeman v. Freeman* (Ky. 1977) 547 S.W.2d 437, 441 [time during which child is wrongfully hidden in a state does not count towards satisfying home state time-in-residence requirement]; *In re B.B.R.* (D.C.Ct.App. 1989) 566 A.2d 1032, 1042 (conc. opn. of Schwelb, J.) [wrongful conduct should not be allowed to create jurisdictional facts].)

While no California case has considered whether a minor's unauthorized absence from a potential home state should be treated as a "temporary absence," California law recognizes an analogous principle. With certain exceptions, Family Code section 3428, subdivision (a) provides as follows: "[I]f a court of this state has jurisdiction under this part because a person seeking to invoke its jurisdiction has engaged in unjustifiable

11

conduct, the court shall decline to exercise its jurisdiction." In *In re Marriage of Nurie* (2009) 176 Cal.App.4th 478, another panel of this court recognized a parent's abduction of a child cannot form the basis for establishing jurisdiction in the abductor's state of residence. (*Id.* at p. 511.) In *In re Marriage of Hopson* (1980) 110 Cal.App.3d 884, the court held a predecessor statute to Family Code section 3428 would apply even if the minor instigated his own removal by a noncustodial parent because of unhappiness with his custodial parent's rules. (*Hopson,* at pp. 889–890.) We hold in this case that barring a threat of mistreatment or abuse in his state of origin, a minor's unilateral decision to run away to California cannot defeat the home-state status of his origin state under the UCCJEA.

Based on our independent analysis of the jurisdictional facts in the record, we conclude the juvenile court lacked subject matter jurisdiction because Maryland was appellant's home state under the UCCJEA. We turn next to the question of whether appellant was prejudiced by the trial court's ruling denying him the right to cross-examine the social worker initially assigned to his case.

## C. *Denial of Cross-examination Right*

Appellant contends the trial court abused its discretion by excluding the testimony of the child welfare worker who prepared the original petition, thereby violating his statutory and due process rights. He represents Yancy could have presented evidence "detailing [appellant's] connections to California, his long absence from Maryland in the care of his aunt, . . . his even longer absence from Honduras[,] . . . . aspects of [his] daily life, his relationship with his girlfriend, and his preparations for impending fatherhood in California."

We are not persuaded by this offer of proof that Yancy's testimony could have supported a finding the juvenile court had subject matter jurisdiction. The material jurisdictional issues—Maria V.'s physical custody of appellant for at least six consecutive months before he ran away from Maryland without her knowledge or permission (or ORR's knowledge or permission), the fact and effect of Maria V.'s sponsorship obligations and attempt to become appellant's legal guardian, the

12

nonexistence of any person in the United States other than Maria V. with responsibility for appellant's well-being—involve only undisputed facts and questions about the legal effect of those facts under the UCCJEA. Yancy's expected testimony could not have changed the jurisdictional analysis or outcome in either regard. Short of having a parent or person acting as a parent in this state during the relevant time, appellant's connections to this state and his daily life and personal relationships while here are not relevant to the analysis under Family Code section 3421. For the reasons discussed earlier, the duration of appellant's self-imposed absence from Maryland without permission or legal authorization is also not relevant.

Thus, even assuming for the sake of analysis the trial court abused its discretion in refusing to allow appellant's trial counsel to cross-examine Ms. Yancy, we find appellant was not prejudiced in developing his factual or legal case on the issue of subject matter jurisdiction because the proposed subjects of her testimony were not germane to the resolution of that issue.

### III.  DISPOSITION

The order dismissing appellant's dependency proceeding is affirmed.

_____

Margulies, Acting P.J.


We concur:


_____

Dondero, J.


_____

Banke, J.


A136240

*In re N.B.*

14

Trial Court:   Alameda County Superior Court

Trial Judge:   Hon. Kimberly M. Briggs

Counsel:

Valerie N. Lankford, under appointment by the Court of Appeal, for Defendant and Appellant.

Donna R. Ziegler, County Counsel, and Teresa L. Robinson, Associate County Counsel, for Plaintiff and Respondent.