Filed 7/12/13  In re E.N. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re E.N. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. R.N., Defendant and Appellant. | E058029 (Super.Ct.Nos. J239161, J239162) **OPINION** |

APPEAL from the Superior Court of San Bernardino County.  Cheryl C. Kersey, Judge.  Affirmed in part and reversed in part with directions.

Johanna R. Shargel, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, and Dawn M. Messer, Deputy County Counsel, for Plaintiff and Respondent.

1

R.N. (the mother) appeals from an order terminating parental rights to two of her children — M.N., a girl who is now four, and E.N., a boy who is now two.

The children were detained just two months after the mother brought them with her from Alabama to California. The mother therefore contends that, under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) (Fam. Code, § 3400 et seq.), a California court did not have jurisdiction to declare the children dependents or to terminate parental rights. Alternatively, the mother also asserts defective compliance with the notice requirements of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) and related federal and state law.

We will hold that the juvenile court had temporary emergency jurisdiction, which, as long as there was no conflicting custody proceeding in any other state, gave it the authority to make final custody determinations. However, we will further hold that the ICWA notice was defective. Hence, we will order a conditional limited remand.

I

FACTUAL AND PROCEDURAL BACKGROUND

As of early 2011, the mother lived in Alabama. She had five children by three different fathers:

1. K.C., a son, born in 1999 (the oldest child);

2. J.B., a son, born in 2001, and S.B., a son, born in 2002 (collectively, the middle children);

2

3. M.N., a daughter, born in 2009, and E.N., a son, born in 2010 (collectively, the youngest children or the children).

Only the youngest children were in the mother's custody. In 2009, a relative who lived in San Bernardino County had been made the legal guardian of the oldest child. Moreover, in 2009, the father of the middle children, who lived in Alabama, had been awarded legal and physical custody of them.

Sometime between April 2 and April 4, 2011, the mother left Alabama and came to California. She took with her not only the youngest children, but also the middle children, who had been visiting her. She enrolled the middle children in school in Adelanto. She also applied for services in Adelanto. As a result, in May 2011, she was located and arrested for kidnapping the middle children.

The mother admitted having "a mental health diagnosis . . . ." She said she had a "place" in Alabama and had come to California to "get" the oldest child.

The children reported that the mother did not feed them regularly or sufficiently. There was not much food in the home. There also were not enough clothes and diapers for the youngest children. All four children had runny noses; the youngest children had eczema. The mother admitted that she had not taken any of the four children to a doctor "in a while."

The middle children were returned to their father, who took them back to Alabama. The youngest children were detained, and San Bernardino County Children and Family Services (the Department) filed dependency petitions concerning them.

3

The mother identified the father of the youngest children as one M.H. (the father), who lived in Alabama.  The Department located him in Mobile.  He was personally served with notice of the dependency, but he never appeared.  The youngest children were placed in a foster home.

The mother was extradited to Alabama.  There is no evidence that she was ever prosecuted for kidnapping; however, she was charged with shoplifting.  She was granted deferred prosecution; hence, she was released, but she could not leave the state.

In July 2011, at the jurisdictional/dispositional hearing, the juvenile court found jurisdiction over the youngest children based on failure to protect (Welf. & Inst. Code, § 300, subd. (b)) and, solely as to the father, failure to support (*id*., subd. (g)).

The mother's Alabama psychiatrist reported that the mother was schizophrenic; she had a history of paranoia, delusions, and hallucinations.  She could not take psychotropic medication because she had become pregnant again.

The mother's "living arrangements" in Alabama were not "stable" — i.e., she moved repeatedly.

In January 2012, when the mother was nine months pregnant, she assaulted her mother (the maternal grandmother).  She was charged with domestic violence.  She also violated her shoplifting probation.

Around March 2012, the mother started missing therapy appointments.

In August 2012, at the 12-month review hearing, the juvenile court terminated reunification services and set a hearing pursuant to Welfare and Institutions Code section 366.26 (section 366.26).

Later in August 2012, the youngest children were placed with the mother's second cousin, who was interested in adopting them.

In December 2012, at the section 366.26 hearing, the juvenile court found that the youngest children were adoptable; it found no applicable exception to termination. Accordingly, it terminated parental rights.

II

UCCJEA JURISDICTION

The mother contends that Alabama — not California — had exclusive subject matter jurisdiction.

"'The UCCJEA is the exclusive method in California to determine the proper forum in child custody proceedings involving other jurisdictions. [Citation.] A dependency action is a "'child custody proceeding'" subject to the UCCJEA. [Citations.] The purposes of the UCCJEA in the context of dependency proceedings include avoiding jurisdictional competition and conflict, promoting interstate cooperation, litigating custody where child and family have closest connections, avoiding relitigation of another state's custody decisions, and promoting exchange of information and other mutual assistance between courts of other states.' [Citation.]" (*In re Nelson B.* (2013) 215 Cal.App.4th 1121, 1128.)

"We . . . independently reweigh the jurisdictional facts. [Citation.]" (*In re Nelson B*., *supra*, 215 Cal.App.4th at p. 1129.)

Family Code section 3421, subdivision (a), part of the UCCJEA, provides four bases on which a California court can exercise nonemergency jurisdiction:

1. "Home state" jurisdiction: "This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state." (Fam. Code, § 3421, subd. (a)(1).)

2. "Significant connection" jurisdiction: "A court of another state does not have jurisdiction under [Family Code section 3421, subdivision (a)(1)], or a court of the home state of the child has declined to exercise jurisdiction on the grounds that this state is the more appropriate forum . . . , and both of the following are true:

"(A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.

"(B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships." (Fam. Code, § 3421, subd. (a)(2).)

3. "More appropriate forum" jurisdiction: "All courts having jurisdiction under [Family Code section 3421, subdivision (a)(1) or (a)(2)] have declined to exercise

jurisdiction on the ground that a court of this state is the more appropriate forum . . . ." (Fam. Code, § 3421, subd. (a)(3).)

4. "Default" jurisdiction: "No court of any other state would have jurisdiction under the criteria specified in [Family Code section 3421, subdivision (a)(1), (a)(2), or (a)(3)]." (Fam. Code, § 3421, subd. (a)(4).)[1]

"Home state" is defined as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period." (Fam. Code, § 3402, subd. (g).)

As the Department concedes, California was not the children's home state, because they had not lived here for at least six months before the commencement of the proceeding. Thus, the juvenile court did not have jurisdiction under Family Code section 3421, subdivision (a)(1).

The Department argues, however, that Alabama was not the children's home state, either, and hence the juvenile court had "significant connection" jurisdiction under Family Code section 3421, subdivision (a)(2). It argues that the mother had been living in California, along with the children, for nearly two months before the commencement of

---

[1] Alabama has adopted the UCCJEA and thus has a substantially identical statute. (Ala. Code, § 30-3B-201.)

the dependency proceeding; thus, the children were not living in Alabama with a parent for at least six consecutive months *immediately* before commencement of the dependency.

We may assume, without deciding, that Alabama was not the children's home state at the commencement of the dependency. However, Family Code section 3421, subdivision (a)(1) has two alternative prongs. Under the second prong, a state has jurisdiction if it (1) was the home state of the children within six months before the commencement of the proceeding, (2) the children were absent from the state, and (3) a parent continues to live in the state. Here, Alabama met all three of these criteria. It was the children's home state until at least two months before the dependency. When the dependency began, the children were absent from Alabama. And one of their parents — the father, M.H. — continued to live in Alabama.[2] Thus, Alabama had jurisdiction under Family Code section 3421, subdivision (a)(1). This necessarily means that California did *not* have nonemergency jurisdiction under subdivision (a)(2), (3), or (4).

However, California did have *emergency* jurisdiction under Family Code section 3424, subdivision (a), which provides: "A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to, or threatened with, mistreatment or abuse." When the children

---

**2**       The Department does not argue that the father was not a "parent" within the meaning of Family Code section 3421. We deem any such contention forfeited.

8

came to the attention of the Department, the mother had just been arrested; the children were underfed, medically neglected, and ill-clad. It was not just appropriate but absolutely necessary to detain them for their protection. The mother does not argue otherwise.

Instead, the mother argues that temporary emergency jurisdiction is meant to be — well, temporary. She asserts: "[A]ny 'emergency' ended when [the] mother was released and required to return to Alabama, and the children should have been returned to their 'home state' at that point too." (Fn. omitted.) She also argues that temporary emergency jurisdiction did not give the juvenile court the authority to make jurisdictional findings or to terminate parental rights.

"An 'emergency' exists when there is an immediate risk of danger to the child if he or she is returned to a parent. [Citation.] Although emergency jurisdiction is generally intended to be short term and limited, the juvenile court may continue to exercise its authority as long as the reasons underlying the dependency exist. [Citations.]" (*In re Jaheim B*. (2008) 169 Cal.App.4th 1343, 1349-1350.)

Here, the mother's arrest for kidnapping was the precipitating cause of the dependency, but it was scarcely the only cause. Even before her arrest, she neglected the children; she failed to feed them regularly, failed to clothe them adequately, and failed to provide for their medical needs. It would appear that the fundamental, underlying cause of the dependency was her mental illness. Virtually throughout the dependency, she was not receiving any therapy or taking any psychotropic medication. Hence, the emergency

9

continued.  (See *In re Jaheim B.*, *supra*, 169 Cal.App.4th at pp. 1350-1351 [emergency jurisdiction continued, even after detention, where mother remained homeless, did not have stable employment, and did not participate in reunification services].)

The UCCJEA itself addresses the duration of any child custody determinations made in the exercise of temporary emergency jurisdiction.  Basically, this depends on whether there are any preexisting child custody proceedings or orders:

1.  Family Code section 3424, subdivision (b) provides:  "If there is *no* previous child custody determination that is entitled to be enforced under this part and a child custody proceeding has *not* been commenced in a court of a state having jurisdiction under Sections 3421 to 3423, inclusive, a child custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under Sections 3421 to 3423, inclusive.  If a child custody proceeding has *not* been or is *not* commenced in a court of a state having jurisdiction under Sections 3421 to 3423, inclusive, a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child." (Italics added.)

2.  Family Code section 3424, subdivision (c) provides:  "If there *is* a previous child custody determination that is entitled to be enforced under this part, or a child custody proceeding *has* been commenced in a court of a state having jurisdiction under Sections 3421 to 3423, inclusive, any order issued by a court of this state under this section must specify in the order a period that the court considers adequate to allow the

10

person seeking an order to obtain an order from the state having jurisdiction under Sections 3421 to 3423, inclusive. The order issued in this state remains in effect until an order is obtained from the other state within the period specified or the period expires." (Italics added.)

Here, there was no previous child custody determination or proceeding, and no other child custody proceeding was commenced while this proceeding was pending. Accordingly, under Family Code section 3424, subdivision (b), the juvenile court's custody determinations not only remained in effect, but became final, because California did eventually become the children's home state.

There are two cases on point.

The first is *In re Angel L.* (2008) 159 Cal.App.4th 1127. There, the child lived with both parents in Nevada. (*Id*. at pp. 1132, 1134.) The father brought her to California to visit her grandmother. Shortly thereafter, the child was detained because the father had left her in the care of the grandmother, who was senile; also, the grandmother's home was unsanitary, and the child had a severe diaper rash. (*Id*. at pp. 1131-1132.) The juvenile court sustained a dependency petition alleging failure to protect. (*Id*. at p. 1133.) Eventually, the juvenile court terminated parental rights. (*Id*. at pp. 1135-1136.)

On appeal, the parents argued that the juvenile court lacked jurisdiction under the UCCJEA. (*In re Angel L*., *supra*, 159 Cal.App.4th at p. 1136.) The appellate court held that, at the outset of the case, the juvenile court properly assumed temporary emergency jurisdiction. (*Id*. at pp. 1137-1138.)

11

It added:  "Even though emergency jurisdiction ordinarily is intended to be short term and limited, the juvenile court may continue to exercise its authority as long as the risk of harm creating the emergency is ongoing.  [Citation.]  In the present proceeding, neither father nor mother contends the conditions leading to the child[] being made dependents of the court would not recur should California cede jurisdiction over the child[] or that it is possible to return . . . the child[] to one or both parents.  They argue only that the child[ is] subject to the jurisdiction of Nevada . . . .  Absent an action in Nevada for the protection of the child[] by the Nevada child protection agency, the California juvenile court properly had, and continues to have, jurisdiction to act.  Once the court detained the child[] and declared [her a] dependent[] of the court, its temporary emergency jurisdiction ripened into permanent jurisdiction and California became [her] home state."  (*In re Angel L.*, *supra*, 159 Cal.App.4th at pp. 1139-1140.)

The court explained:  "'[H]ome state' [is defined] as the state in which the child immediately preceding the time involved lived with . . . a parent, or person acting as a parent, for at least six consecutive months.  [Citation.]  From [the filing of the dependency], the child[] ha[s] been in the care, custody and control of respondent.  Even if the record does not affirmatively show [she] had been in California for six months prior to the court declaring the child[] to be [a] dependent[] . . . , at least at the time the court terminated reunification services and ordered permanent planning services, the child[] had been in California for six months in the care of the respondent and the juvenile court, who acted as a parent."  (*In re Angel L.*, *supra*, 159 Cal.App.4th at p. 1140.)

12

The second case is *In re Jaheim B.*, *supra*, 169 Cal.App.4th 1343.  There, the mother and child moved from Florida to California.  About five months later, the child was detained after the mother abandoned him.  (*Id*. at p. 1346.)  The father was in prison in Alabama.  (*Id*. at p. 1347.)  The juvenile court found that it had jurisdiction based on failure to protect.  (*Ibid*.)

The father appealed, arguing that the juvenile court lacked jurisdiction under the UCCJEA.  (*In re Jaheim B.*, *supra*, 169 Cal.App.4th at p. 1348.)  The appellate court held that, at the outset of the case, "the juvenile court did have emergency jurisdiction . . . because Jaheim was present in California when the neglect occurred, and the court's action was necessary to protect Jaheim from immediate harm.  [Citation.]"  (*Id*. at p. 1350.)  Thereafter, "there was no jurisdictional conflict with another state's court and therefore, the UCCJEA did not restrict the court's power to proceed.  [Citations.]  . . . Once the court detained Jaheim and declared him a dependent and removed him from parental custody, 'its temporary emergency jurisdiction ripened into permanent jurisdiction and California became [his] home state.'  [Citation.]"  (*Id*. at p. 1351.)

Here, just as in *Angel L.* and *Jaheim B.*, there is no prior custody proceeding and there are no prior custody orders.  When the dependency was filed, the juvenile court properly assumed temporary emergency jurisdiction.  As the emergency continued, so did the juvenile court's jurisdiction.  Eventually, because the children were living in California, in the custody of the juvenile court and the Department, for more than six months, California became their home state.  At that point, under Family Code section

13

3424, subdivision (b), the juvenile court became authorized to make final custody determinations, and any custody determinations that it had previously made became final.

The mother quotes *In re C.T.* (2002) 100 Cal.App.4th 101, which stated that "emergency jurisdiction does not confer . . . the authority to make a permanent custody disposition. [Citation.]" (*Id*. at p. 108.) It also stated, "a finding of emergency under the [UCCJEA] does not contemplate or authorize a finding that the minor is a person described in [Welfare and Institutions Code] section 300." (*Id*. at p. 109.)

In *In re C.T.*, however, a child custody proceeding was already pending in another state. (*In re C.T.*, *supra*, 100 Cal.App.4th at p. 104.) Thus, the court stated, "we examine the procedure set forth in the [UCCJEA] applicable to the assertion of [dependency] jurisdiction *over a child who is the subject of an existing sister state custody order . . . .*" (*Id*. at p. 107, italics added.) It noted that, under Family Code section 3424, subdivision (c), an "order assuming emergency jurisdiction . . . has time limitations. It must specify 'a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction.' [Citation.] It 'remains in effect until an order is obtained from the other state within the period specified or the period expires.' [Citation.]" (*Id*. at p. 108.) Thus, based on Family Code section 3424, subdivision (c), the court "conclude[d] the juvenile court was not authorized under the [UCCJEA] to make the section 300 true finding . . . ." (*Id*. at p. 109.)

*In re C.T.* is not controlling because here, again, there was no prior child custody proceeding in Alabama. Accordingly, Family Code section 3424, subdivision (c) does

not apply. Rather, the applicable provision is Family Code section 3424, subdivision (b), which expressly allows a court with temporary emergency jurisdiction to make "a final determination . . . ."

We therefore conclude that the juvenile court had subject matter jurisdiction throughout the dependency.

III

ICWA NOTICE

The mother contends that the juvenile court failed to comply with the notice provisions of ICWA and related federal and state law.

A.    *Additional Factual and Procedural Background.*

When first interviewed, the mother said she thought she had Indian ancestry through her maternal grandmother; she could not name the tribe.

The mother completed a "Parental Notification of Indian Status" (Form ICWA-020) stating, "I may have Indian ancestry" but giving no further details.

At the detention hearing, she similarly stated that she had Indian heritage on her mother's side. She provided her mother's maiden name, address, and date of birth.

On June 27, 2011, the Department provided notice of the proceedings by sending a "Notice of Child Custody Proceeding for Indian Child" (Form ICWA-030) to the mother and to the Bureau of Indian Affairs (BIA) by certified mail. The notice included the mother's name, address, and date and place of birth; her mother's maiden and married names, address, and date and place of birth; her father's name and date and place of birth;

15

her maternal grandmother's married name and place of death; and her maternal grandfather's name and place of death. It also included the father's name and date of birth. All other information was listed as either "unknown" or "no information available." (Capitalization omitted.)

On or about July 12, 2011, the BIA responded: "The family provided insufficient information to substantiate any federally recognized tribe."

The Department filed an "ICWA Declaration of Due Diligence." Under "search efforts," it listed only two "search sources," the mother and the BIA. (Capitalization omitted.)

On September 12, 2011, the juvenile court found that ICWA did not apply.

B.     *Analysis*.

"Congress enacted ICWA to further the federal policy '"that, where possible, an Indian child should remain in the Indian community . . . ."'" [Citation.]" (*In re W.B., Jr.* (2012) 55 Cal.4th 30, 48.)

Under ICWA, whenever "the court knows or has reason to know that an Indian child is involved," notice of the proceedings must be given to "the parent . . . and the Indian child's tribe . . . ." (25 U.S.C. § 1912(a).) "If the identity . . . of the . . . tribe cannot be determined," the notice must be given to the BIA. (*Ibid.*; 25 C.F.R. § 23.11(b), (c).)

Under implementing federal regulations, the notice must include the names (including maiden, married, and former names), current and former addresses, birthdates,

16

and places of birth and death of the child's parents grandparents and great grandparents, "if known." (25 C.F.R. § 23.11(a), (d).)

California has extended the obligation to give notice to those situations in which "the court, a social worker, or probation officer knows *or has reason to know* that an Indian child is involved . . . ." (Welf. & Inst. Code, § 224.2, subd. (a), italics added.) California law also provides that "[t]he court [and] county welfare department . . . have an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child in all dependency proceedings . . . if the child is at risk of entering foster care or is in foster care." (Welf. & Inst. Code, § 224.3, subd. (a).) "If the court [or] social worker . . . knows or has reason to know that an Indian child is involved, the social worker . . . is required to make further inquiry regarding the possible Indian status of the child, and to do so as soon as practicable, by interviewing the parents, Indian custodian, and extended family members . . . and contacting . . . any other person that reasonably can be expected to have information regarding the child's membership status or eligibility." (Welf. & Inst. Code, § 224.3, subd. (c).)

"If proper and adequate notice has been provided . . . , and neither a tribe nor the Bureau of Indian Affairs has provided a determinative response within 60 days after receiving that notice, the court may determine that [ICWA] does not apply to the proceedings . . . ." (Welf. & Inst. Code, § 224.3, subd. (e)(3).)

"ICWA notice issues cannot be forfeited for appeal by a parent's failure to raise them in the juvenile court, because it is the tribes' interest, not the parents', that is at stake

17

in dependency proceedings that implicate ICWA.  [Citations.]"  (*In re A.G.* (2012) 204 Cal.App.4th 1390, 1400.)

"The juvenile court must determine whether proper notice was given under ICWA and whether ICWA applies to the proceedings.  [Citation.]  We review the trial court's findings for substantial evidence.  [Citation.]"  (*In re E.W.* (2009) 170 Cal.App.4th 396, 403-404.)

To the extent that the notice did not include information about (1) the father and his family, (2) the mother's father and his family, or (3) the mother's paternal grandfather and his family, any error was harmless.  The mother had already indicated that the children's Indian ancestry, if any, was through her maternal grandmother.  Thus, the omitted information would not have helped to determine whether the children were Indian children.  (*In re Cheyanne F*. (2008) 164 Cal.App.4th 571, 576-577 [Fourth Dist., Div. Two] [omission of information regarding non-Indian side of family was harmless].)

However, the notice also failed to include information about the mother's maternal grandmother — her maiden name, address(es), birth date, or place of birth.  Although it stated that this information was not available, the "Declaration of Due Diligence" revealed that the only inquiry the social worker had actually made was to the mother; even though the mother had provided her mother's address, the social worker had not contacted the mother's mother.  Thus, there is insufficient evidence that the omitted information was, in fact, unavailable.  Indeed, it seems reasonably likely that the mother's mother would have been able to provide at least some of this information about her own

18

mother. For the same reasons, the record demonstrates that the social worker failed to make the requisite further inquiry. And finally, for all the same reasons, there is insufficient evidence to support the finding that ICWA did not apply.

"Because the juvenile court failed to ensure compliance with the ICWA requirements, the court's order terminating parental rights must be conditionally reversed. This 'does not mean the trial court must go back to square one,' but that the court ensures that the ICWA requirements are met. [Citations.] 'If the only error requiring reversal of the judgment terminating parental rights is defective ICWA notice and it is ultimately determined on remand that the child is not an Indian child, the matter ordinarily should end at that point, allowing the child to achieve stability and permanency in the least protracted fashion the law permits.' [Citation.]" (*In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1168, fn. omitted.)

IV

DISPOSITION

The orders appealed from are reversed, subject to the following conditions. On remand, the juvenile court shall order the Department to give notice in compliance with ICWA and related federal and state law. This shall include, without limitation, contacting the mother's mother, if still feasible, and asking her to provide the information required to be in the notice. Once the juvenile court finds that there has been substantial compliance with the notice requirements of ICWA, it shall determine whether the children are Indian children. If it finds that they are not Indian children, it shall reinstate the original order

19

terminating parental rights.  If it finds that they are Indian children, it shall set a new section 366.26 hearing and it shall conduct all further proceedings in compliance with ICWA and related federal and state law.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI  
　　　　　　　　　　　　　　　　　　　　J.

We concur:

McKINSTER  
　　　　　Acting P. J.

KING  
　　　　　　　　J.

20