Filed 10/23/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re AIDEN L. et al., Persons Coming Under the Juvenile Court Law. | B277445 |
| | (Los Angeles County Super. Ct. No. DK06921) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| BRITTNEY M. et al., | |
| Appellants. | |

APPEALS from orders of the Superior Court of Los Angeles County, Annabelle G. Cortez and Lisa R. Jaskol, Judges.  The order terminating parental rights is vacated and the matter is remanded with directions.

Lori N. Siegel, under appointment by the Court of Appeal, for Brittney M.

Jesse McGowan, under appointment by the Court of Appeal, for Hector and Sandra M.

Law Office of Landon C. Villavaso and Landon C. Villavaso for Cora L. and P.L., minors.

Mary C. Wickham, County Counsel, R. Keith Davis, Assistant County Counsel, and David Michael Miller, Deputy County Counsel for Respondent.

————————————

Although conceding the Los Angeles juvenile court properly exercised temporary emergency jurisdiction over her now-seven-year-old son, Aiden L., Brittney M. contends Arizona is Aiden's home state under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) (Fam. Code, § 3400 et seq.).[1] Because the Los Angeles court failed to contact officials in Arizona and allow that state to properly assert its jurisdiction over Aiden, Brittney argues, its findings and orders from the jurisdiction hearing forward, including the August 8, 2016 order terminating her and her husband's parental rights, must be reversed. Brittney's challenge to the jurisdiction of the California court to terminate her parental rights is joined by Aiden's maternal grandparents, who live in Arizona and have custody of Aiden's two older sisters, Cora L. and P.L., and by his siblings, Cora and P.L.

Even though the juvenile court at no time addressed the UCCJEA, the Los Angeles County Department of Children and

---

[1] Statutory references are to the Family Code unless otherwise stated.

Family Services (Department) contends the record supports the court's exercise of jurisdiction.

We vacate the order terminating parental rights and remand the matter to the juvenile court to make the findings necessary to determine jurisdiction under the UCCJEA and, to the extent mandated by those findings, comply with the procedural requirements of the UCCJEA.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Brittney and Joseph L.'s Unstable Life in Arizona and Sojourn to California*

Brittney and Joseph L. were married in 2006 and, while living in Arizona, had three children together, Cora, now 10 years old, P.L. now nine years old, and Aiden.[2] In early 2012 Brittney temporarily separated from Joseph and brought the children to stay with her parents, Hector and Sandra M., who lived nearby in Yucca, Arizona. (Hector is a retired Santa Ana police officer; Sandra a retired Orange County deputy sheriff.) After several weeks Brittney took the children with her to visit a friend over a weekend. She returned only Cora and P.L. to the maternal grandparents. According to Joseph, they voluntarily relinquished care of the two girls because he and Brittney were unable to provide them with a stable home. However, Aiden, who was not yet in school, "needed them more than the girls." Over the next two years Hector and Sandra made several unsuccessful attempts to persuade Brittney and Joseph to allow Aiden to stay with them, as well.

---

[2] Aiden's birth certificate states he was born in Lake Havasu City, Arizona at the Havasu Regional Medical Center.

3

On March 1, 2012 the Superior Court of Arizona, Mohave County, granted Hector and Sandra's petition and awarded them sole custody of Cora and P.L. In June 2016 the court terminated Brittney and Joseph's parent-child relationship with Cora and P.L., finding in part that they were unable to discharge their parental responsibilities due to a 20-year history of substance abuse.

In March 2014, after two more difficult years in Arizona where they had been unable to find employment or maintain a stable home environment for Aiden, Brittney and Joseph travelled with their son to Los Angeles. Joseph told a Department social worker they had intended to open a "vape shop"—a retail store selling electronic cigarette products—in Long Beach. When they initially arrived in California, the family lived with paternal relatives in West Covina. However, they were concerned for Aiden's safety because Aiden's paternal grandmother was a heroin and methamphetamine addict and a second cousin, who had unrestricted access to the home, was a registered sex offender. To remove Aiden from that setting, Brittney and Joseph moved with him to a motel in West Covina.

2. *Brittney's Arrest and Aiden's Detention*

On August 4, 2014, after Brittney attempted to purchase a car with what appeared to be a forged or fraudulent check, police officers went to the family's motel room to investigate. Once in the room the officers found heroin and drug paraphernalia in a nightstand next to where Aiden was sleeping. Brittney was arrested for making false financial statements and drug possession. Although a general neglect referral to the Department was promptly made, the assigned case social worker was initially unable to locate either Joseph or Aiden. When

4

interviewed in jail, Brittney requested that Aiden be sent to live with his maternal grandparents and sisters in Arizona if he was removed from Joseph's custody.

The following day the Department's social worker met with Joseph and Aiden at their motel. Aiden was allowed to remain in Joseph's care. Like Brittney, Joseph asked that Aiden be placed with his maternal grandparents and his sisters if removed from his custody. On August 6, 2014 Joseph tested positive for methamphetamine and marijuana. He admitted using methamphetamine two days earlier, when Brittney had been arrested, and claimed she had used heroin that day.

On August 13, 2014 the Department detained Aiden in the home of maternal great-aunt Nancy N. (Hector's sister). The Department filed a petition pursuant to Welfare and Institutions Code section 300, subdivisions (a) (serious physical harm) and (b) (failure to protect), on Aiden's behalf on August 14, 2014, alleging in part that Brittney and Joseph had endangered Aiden by allowing him to live within ready access of heroin and that both parents had a history of illicit drug abuse and were current abusers of methamphetamine and other drugs. The petition also alleged the couple had engaged in acts of domestic violence in Aiden's presence.

The detention report filed by the Department stated the maternal grandparents had called the assigned social worker, explained that Aiden's two sisters were in their custody and said they would like Aiden to be placed with them. The Department recommended that an evaluation of the maternal grandparents' home under the Interstate Compact on the Placement of Children (ICPC) be ordered for possible placement of Aiden "to maintain siblings' bond."

5

Prior to the jurisdiction hearing Nancy told the Department she was willing to care for Aiden and to adopt him if his parents failed to reunify with him. Sandra told the social worker she was "okay with Aiden being with Nancy. We are happy that he is being well taken well care of." Hector also told the social worker he was satisfied with Aiden being placed permanently with his sister.

In a later interview, however, Hector reported that, when Aiden was initially detained, he inquired about Aiden being placed with Aiden's two sisters and was told that was not possible because he lived out of state, which would interfere with Brittney and Joseph's reunification efforts. The social worker told Hector he needed to find a relative for Aiden to live with or he would be placed in foster care. It was at that point that Hector asked his sister Nancy if she could take Aiden into her home. Hector insisted he and Sandra had repeatedly expressed their desire to have Aiden live with them, only to be told that was not feasible so long as reunification efforts were ongoing because they lived too far away for visitation to occur. Then, when the parents' reunification services were terminated, Hector and Sandra were told Aiden was now bonded with his maternal great-aunt Nancy.

3. *Subsequent Dependency Proceedings*

A combined jurisdiction-disposition hearing was set for October 21, 2014 and continued to December 17, 2014 for a contested hearing.[3] In filings with the court the Department

---

[3] Copies of the initial jurisdiction-disposition report, dated October 9, 2014, were served on Brittney by the Department at addresses in Covina, California, La Puente, California, Kingman, Arizona, and Lake Havasu City, Arizona. Joseph's service copies

reported that Brittney had been born in Anaheim and moved with her parents to Lake Havasu City, Arizona, when she was 15. She graduated from high school and attended community college in Arizona. Joseph was born in West Covina but attended high school and community college in Arizona. He indicated his parents had a long history of substance abuse and stated his father was in prison in Arizona. His mother was then living once again in West Covina where other members of the family also lived.

Brittney and Joseph told the social worker they were homeless, slept in their car at night and needed financial assistance to be able to rent an apartment to provide a home for Aiden.

Brittney was convicted on August 21, 2014 on charges of child cruelty and felony drug possession. She was sentenced to three years of probation with a condition she serve 181 days in county jail. Due to a conviction for identity theft in Arizona, she was subsequently confined in state prison in Perryville, Arizona, with a reported January 6, 2017 release date.[4]

The court sustained most of the subdivision (b) failure-to-protect counts of the dependency petition on December 17, 2014. Aiden was removed from parental custody and placed with his

of the report were sent to addresses in Covina, California and Rio Linda, California.

[4] Brittney's incarceration in an Arizona state prison was first noted in the Department's report for the October 19, 2015 12-month permanency review hearing. She had been arrested in Arizona, as was Joseph, in July 2015. An addendum report for the continued hearing date of January 5, 2016 indicated Brittney's release date at that point was June 2017.

maternal great-aunt.  Brittney and Joseph were provided with family reunification services including a drug program with aftercare.

Brittney and Joseph's visitation with Aiden during the following months was sporadic, and their participation in court-ordered services minimal.  At some point (when is unclear) both parents returned to Arizona.  Brittney and Joseph were arrested in Arizona in early July 2015 for shoplifting.  The social worker spoke by telephone with Sandra, who informed her both Brittney and Joseph had other outstanding warrants in Arizona.  Whether those warrants were for offenses that predated their arrival in California in March 2014 is not indicated.

Family reunification services were terminated on January 5, 2016 at the 12-month permanency review hearing (Welf. & Inst. Code, § 366.21, subd. (f)) after the court found Brittney and Joseph were not making adequate progress with their case plans.  The court scheduled a selection and implementation hearing (Welf. & Inst. Code, § 366.26) for May 13, 2016.

On April 29, 2016 Cora and P.L. filed a petition to modify prior court orders (Welf. & Inst. Code, § 388), requesting that Aiden be removed from the maternal great-aunt's home and placed together with them in the home of their maternal grandparents.  The court ordered briefing and continued the selection and implementation hearing to trail the hearing on the siblings' petition.

After testimony was taken over several days, the court on August 3, 2016 denied Cora and P.L.'s petition, finding Aiden's best interest would not be served by changing his placement.  The court proceeded with the selection and implementation

8

hearing on August 8, 2016. Counsel for Brittney and for Cora and P.L. argued the Welfare and Institutions Code section 366.26, subdivision (c)(1)(B)(v) sibling exception applied and barred termination of parental rights. The court rejected the argument, based in part on Nancy's statement of intent to continue to allow contact between Aiden and his siblings; found Aiden adoptable by clear and convincing evidence; ordered termination of Brittney and Joseph's parental rights; and designated Nancy as Aiden's prospective adoptive parent.

Brittney, Hector and Sandra, and Cora and P.L. timely filed separate notices of appeal. Brittney's motion to consolidate the appeals was granted in January 2017. Each of the appellants contends the Los Angeles juvenile court lacked subject matter jurisdiction over Aiden under the UCCJEA and, as a result, all permanent child custody orders must be reversed.

## DISCUSSION

1. *Subject Matter Jurisdiction Under the UCCJEA*
    a. *Jurisdictional bases*

The UCCJEA, adopted in California effective January 1, 2000 (see *In re Cristian I.* (2014) 224 Cal.App.4th 1088, 1096 (*Cristian*); *In re C.T.* (2002) 100 Cal.App.4th 101, 106) and in Arizona effective January 1, 2001 (see *Welch-Doden v. Roberts* (2002) 202 Ariz. 201, 208 [42 P.3d 1166]), governs dependency proceedings (§ 3402, subd. (d)) and provides the exclusive means for determining the proper forum and subject matter jurisdiction for child custody proceedings involving those two states. (§ 3421, subd. (b) ["[s]ubdivision (a) [of this section] is the exclusive jurisdictional basis for making a child custody determination by a court of this state"]; Ariz.Rev.Stat. § 25-1031, subd. (B) [same]; see *In re A.C.* (2017) 13 Cal.App.5th 661, 668; *In re M.M.* (2015)

9

240 Cal.App.4th 703, 715.) "The UCCJEA is designed to avoid jurisdictional conflicts between states and relitigation of custody decisions, promote cooperation between states, and facilitate enforcement of another state's custody decrees." (*In re R.L.* (2016) 4 Cal.App.5th 125, 136.)

Subject matter jurisdiction over a dependency action under the UCCJEA either exists or does not exist at the time the petition is filed. (*In re A.C.*, *supra*, 13 Cal.App.5th at p. 668; *In re A.M.* (2014) 224 Cal.App.4th 593, 598.) Jurisdiction may not be conferred by mere presence of the parties or by stipulation, consent, waiver or estoppel. (*In re R.L.*, *supra*, 4 Cal.App.5th at p. 136; *In re A.M.*, at p. 598.)

Section 3421, subdivision (a), sets forth four alternative bases for subject matter jurisdiction:

"(a) Except as otherwise provided in Section 3424,[5] a court of this state has jurisdiction to make an initial child custody determination only if any of the following are true:

---

[5]    Section 3424 provides an exception to the exclusive jurisdictional bases for making an initial child custody determination or modifying a sister state custody order. (§§ 3421, subds. (a), (b), 3423.) A California court may exercise "temporary emergency jurisdiction" when a "child is present in this state and . . . it is necessary in an emergency to protect the child because the child . . . is subjected to, or threatened with, mistreatment or abuse." (§ 3424, subd. (a).) An "emergency" exists when there is an immediate risk of danger to the child if he or she is returned to a parent. (*Cristian, supra*, 224 Cal.App.4th at p. 1097; *In re Jaheim B.* (2008) 169 Cal.App.4th 1343, 1349; *In re Nada R.* (2001) 89 Cal.App.4th 1166, 1174-1175.) "Although emergency jurisdiction is generally intended to be short term and limited, the juvenile court may continue to exercise its authority as long as the reasons underlying the dependency exist." (*In re*

10

"(1)  This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.

"(2)  A court of another state does not have jurisdiction under paragraph (1), or a court of the home state of the child has declined to exercise jurisdiction on the grounds that this state is the more appropriate forum under Section 3427 or 3428, and both of the following are true:  [¶]  (A)  The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.  [¶]  (B)  Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

"(3)  All courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 3427 or 3428.

"(4)  No court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3)."

"Home state" under the UCCJEA means, "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding.  In the case of a

_Jaheim B._, at pp. 1349-1350; accord, _Cristian_, at pp. 1097-1098.) Nonetheless, the proper exercise of temporary emergency jurisdiction does not confer authority to make a permanent child custody order.  (_In re Gino C._ (2014) 224 Cal.App.4th 959, 965-966; _In re C.T._, _supra_, 100 Cal.App.4th at p. 108.)

11

child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned.  A period of temporary absence of any of the mentioned persons is part of the period."  (§ 3402, subd. (g).)  A child's home state has priority over other jurisdictional bases.  (§ 3421, subd. (a)(1); *In re A.C.*, *supra*, 13 Cal.App.5th at p. 669.)

The term "lived" for the purpose of conferring home state jurisdiction is properly interpreted to mean physical presence.  Agreeing with, and quoting from, the analysis of the Texas Supreme Court, the Court of Appeal in *Ocegueda v. Perreira* (2015) 232 Cal.App.4th 1079, 1087-1088, explained it was "'significant that the Legislature chose the word "lived" as opposed to "resided" or "was domiciled."  The test for "residence" or "domicile" typically involves an inquiry into a person's intent.  [Citation.]  In our view, the Legislature used the word "lived" "precisely to avoid complicating the determination of a child's home state with inquiries into the states of mind of the child or the child's adult caretakers."'"

"Temporary absence," on the other hand, another aspect of the home state analysis, necessarily requires consideration of the parents' intentions, as well as other factors relating to the circumstances of the child's or family's departure from the state where they had been residing.  (See *In re Marriage of Nurie* (2009) 176 Cal.App.4th 478, 493, fn. 12 ["both parents intended for Son to return to California . . . .  Because the trip at least began as a 'temporary absence,' under any applicable standard, the time Son spent in Pakistan before Wife informed Husband that she would not return to California should be considered part of Son's period of residence in California"]; cf. *In re Nelson B.* (2013) 215 Cal.App.4th 1121, 1131-1132 ["a minor's unilateral

12

decision to run away to California cannot defeat the home-state status of his origin state under the UCCJEA"].)

"Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination." (§ 3421, subd. (c); see *In re Gino C.* (2014) 224 Cal.App.4th 959, 965.)

b. *Contacting the child's home state*

If a California court has exercised temporary emergency jurisdiction pursuant to section 3424, subdivision (a), to protect a child present in the state from actual or threatened abuse or mistreatment, that court may not address the merits of the dependency petition or otherwise make a final child custody determination until it properly asserts jurisdiction under the nonemergency jurisdiction provisions of the UCCJEA. (*In re Gino C., supra*, 224 Cal.App.4th at p. 966; *In re C.T., supra*, 100 Cal.App.4th at p. 113.) Thus, if the court is aware that another state (or foreign country) qualifies as the child's home state, the California court must contact the home state court to give it an opportunity to decide whether to exercise its home state jurisdiction. (See §§ 3421, subd. (a)(2) & (3), 3424, subd. (b); *In re M.M., supra*, 240 Cal.App.4th at pp. 718-719 [assertion of jurisdiction affirmed; "the record shows the juvenile court made several attempts to discuss the jurisdiction issue with a Japanese court before the juvenile court properly exercised permanent jurisdiction"]; *In re Gino C.*, at p. 966 [reversing exercise of permanent jurisdiction; "[s]ince the court opted to remain passive and did not contact Mexico, Mexico has not been given an opportunity to decide whether to exercise its home state jurisdiction"]; *In re A.M., supra*, 224 Cal.App.4th at p. 598; see generally § 3410, subd. (a) ["[a] court of this state may

13

communicate with a court in another state concerning a proceeding arising under this part"].)

An express order by the home state declining jurisdiction in response to the inquiry from the California court is not required. (*In re M.M.*, *supra*, 240 Cal.App.4th at p. 716.) "[W]hen a home state declines jurisdiction in any manner that conveys its intent *not* to exercise jurisdiction over a child in connection with a child custody proceeding, including inaction *or*, as in the instant case, by refusing to even discuss the issue of jurisdiction despite myriad good faith attempts to do so by the juvenile court, . . . such inaction or refusal is tantamount to a declination of jurisdiction by the home state on the grounds California is the more appropriate forum under subdivision (a)(2) of section 3421." (*Id.* at p. 717.)

2. *Standard of Review:  The Respective Roles of the Juvenile and Appellate Courts*

A number of appellate courts have stated we independently reweigh the jurisdictional facts when reviewing a juvenile or family court's findings regarding subject matter jurisdiction under the UCCJEA.  (See, e.g., *In re A.M.*, *supra*, 224 Cal.App.4th at p. 598 ["'[w]e are not bound by the juvenile court's findings regarding subject matter jurisdiction, but rather "independently reweigh the jurisdictional facts"'"]; *In re A.C.* (2005) 130 Cal.App.4th 854, 860 [same]; see also *Schneer v. Llaurado* (2015) 242 Cal.App.4th 1276, 1284, fn. 2 [collecting cases] (*Schneer*).)

In *Schneer* our colleagues in Division Two of the Fourth Appellate District analyzed those cases and concluded they had misapplied precedent and were contrary to the "fundamental principle that appellate courts do not reweigh facts and generally

must defer to the trial court's resolution of credibility and conflicts in the evidence." (*Schneer, supra*, 242 Cal.App.4th at pp. 1285-1286.) The *Schneer* court held, "when the facts are contested, a trial court's jurisdictional finding under the UCCJEA is reviewed under the deferential substantial evidence standard." (*Id.* at p. 1286.) In reaching this result the *Schneer* court noted that Division Four of this court had also applied the substantial evidence standard of review to jurisdictional findings in *Haywood v. Superior Court* (2000) 77 Cal.App.4th 949, 954, and *In re Janette H.* (1987) 196 Cal.App.3d 1421, 1427.

Earlier this year, Division One of the Fourth Appellate District adopted the *Schneer* court's reasoning and applied the substantial evidence standard in reviewing the juvenile court's findings on jurisdictional facts to the extent they were based on disputed or contested evidence. (*In re A.C., supra*, 13 Cal.App.5th at p. 669 & fn. 5.) We agree with *Schneer*, as well.[6] It is the responsibility of the juvenile court in the first instance to hold an evidentiary hearing to determine whether any basis exists under the UCCJEA for it to exercise jurisdiction and to make child custody orders beyond the temporary emergency orders authorized by section 3424. (See *Cristian, supra*, 224 Cal.App.4th at pp. 1100-1101.)[7] Our role, once the juvenile

---

[6] In their briefs on appeal Brittney and the Department cite only to cases stating the appellate court does not defer to the factual findings of the juvenile court. Hector and Sandra cite *Schneer, supra*, 242 Cal.App.4th at page 1286 and acknowledge the split in authority.

[7] In *Cristian, supra*, 224 Cal.App.4th 1088, we held a detention hearing under Welfare and Institutions Code section 319 at which the parents and child and their counsel were

15

court has evaluated witnesses' credibility, resolved conflicts in the evidence and made its findings, is to ensure that the provisions of the UCCJEA have been properly interpreted and that substantial evidence supports the factual basis for the juvenile court's determination whether California may properly exercise subject matter jurisdiction in the case.

> 3. *UCCJEA Subject Matter Jurisdiction over Aiden's Case*

The detention report filed August 14, 2014 clearly stated that Brittney, Joseph and Aiden had traveled to California from Arizona in March 2014, approximately four months before the dependency petition was filed. Accordingly, as the Department concedes, California was not Aiden's home state on the date of the commencement of the proceedings. Yet for unexplained reasons, the issue of subject matter jurisdiction under the UCCJEA was not raised by the Department or addressed by the juvenile court either when it initially detained Aiden or when it

---

present satisfied the requirement of an evidentiary hearing before a California court could assert temporary emergency jurisdiction and rejected the mother's contention a further evidentiary hearing was necessary to maintain that jurisdiction while waiting to learn whether Arizona intended to exercise its exclusive, continuing jurisdiction. (*Id.* at pp. 1099-1100.) We explained, "[I]f the juvenile court had attempted to exercise something beyond temporary emergency jurisdiction—if it had proceeded to adjudicate the dependency petition and to enter disposition orders without the Arizona court first ceding jurisdiction—a further evidentiary hearing would have been required to determine the basis on which the California court had jurisdiction . . . .," citing Family Code section 3425, *In re C.T.*, *supra*, 100 Cal.App.4th at page 113, and *People v. Beach* (1987) 194 Cal.App.3d 955, 963.)

16

made its jurisdiction findings and subsequent child custody orders. This was error.

First, as required by the UCCJEA, the juvenile court should have determined whether Arizona was Aiden's home state and, if it was, communicated with the Arizona court system to give it an opportunity to decide whether to exercise its home state jurisdiction. Although Aiden had "lived" in California with Brittney and Joseph for four months prior to the filing of the dependency petition according to the objective standard articulated in *Ocegueda v. Perreira, supra*, 232 Cal.App.4th at pages 1087 through 1088, the court should have considered whether the family's stay in California during this period was a "temporary absence" from Arizona within the meaning of section 3402, subdivision (g)—an inquiry that requires a careful examination of the family's circumstances as of August 2014 when the dependency petition was filed.

A ruling on the temporary absence issue on remand will entail an evaluation of Brittney and Joseph's reasons for leaving Arizona in March 2014 and their plans once they arrived in California, including whether they discussed returning to Arizona if their search for employment in California, the purported motive for leaving, proved unsuccessful. (Cf. *In re Marriage of Nurie, supra*, 176 Cal.App.4th at p. 493, fn. 12.) In addition, the court should consider that Brittney and Joseph had apparently resided in Arizona for their entire adult (post-high school) lives and maintained a transient lifestyle after traveling to California. Also significant is the fact that Aiden's siblings continued to reside in Arizona with the maternal grandparents and that Arizona custody proceedings were then pending with

17

respect to those two children.[8]  Finally, the juvenile court should
determine whether there were outstanding warrants for Brittney
and Joseph's arrest in Arizona in March 2014 and, if so, whether
that was part of the reason the couple left the state when they
did.  (Cf. § 3428, subd. (a) [court should decline to exercise its
jurisdiction "if a court of this state has jurisdiction under [the
UCCJEA] because a person seeking to invoke its jurisdiction has
engaged in unjustifiable conduct"]; *In re Nelson B.*, *supra*,
215 Cal.App.4th at p. 1131 [noting that some UCCJEA states
consider the period following a child's unauthorized removal as a
temporary absence from the state and that § 3428, subd. (a),
provides an analogous principle].)[9]

Second, if the court determines Arizona was not Aiden's
home state when the dependency proceedings were initiated and,
therefore, no state had jurisdiction under section 3421,
subdivision (a)(1), it must then decide whether California has
jurisdiction under section 3421, subdivision (a)(2), because it was
a more appropriate forum than Arizona considering the factors

---

[8]    As discussed, Brittney and Joseph's parental rights with
respect to Cora and P.L. were not terminated until June 2016,
nearly two years after the Department filed the dependency
petition concerning Aiden.

[9]    Because the issue of subject matter jurisdiction under the
UCCJEA must be addressed by the juvenile court in the first
instance, we need not consider the Department's contention that
this matter "compares favorably" with *In re S.W.* (2007)
148 Cal.App.4th 1501, in which the Court of Appeal,
independently weighing the jurisdictional facts, rejected the
mother's claim she was only temporarily absent from Nebraska
during the time she lived in a van in California.

18

identified in section 3427, subdivision (b);[10] Aiden and one or both of his parents "ha[d] a significant connection with this state other than mere physical presence" (§ 3421, subd. (a)(2)(A)); and substantial evidence was available in California "concerning the child's care, protection, training and personal relationships" (§ 3421, subd. (a)(2)(B)). Again, this evaluation of factual issues underlying the assertion of UCCJEA subject matter jurisdiction must be done as of the time the dependency proceedings were initiated. Accordingly, in addition to weighing Brittney and Joseph's connection to California after living most of their adult lives in Arizona, the nature of Aiden's relationship with his maternal great-aunt on August 18, 2014 when he had been detained with her for only six days, not their current relationship after three years of living together, is to be considered in deciding whether Aiden had a significant connection with California other

---

[10] In evaluating whether California is an inconvenient forum under section 3427, subdivision (b), the court must consider "all relevant factors, including: [¶] (1) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child. [¶] (2) The length of time the child has resided outside this state. [¶] (3) The distance between the court in this state and the court in the state that would assume jurisdiction. [¶] (4) The degree of financial hardship to the parties in litigating in one forum over the other. [¶] (5) Any agreement of the parties as to which state should assume jurisdiction. [¶] (6) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child. [¶] (7) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence. [¶] (8) The familiarity of the court of each state with the facts and issues in the pending litigation."

19

than mere physical presence.[11]  Similarly, the assessment of the relative availability of evidence in California and Arizona necessary to maintain and strengthen Aiden's personal relationship with his siblings must be made as of the date dependency proceedings started.  Finally, the court must consider that the allegations in the dependency petition to be adjudged concerning the risk to Aiden from remaining in the care and custody of Brittney and Joseph included not only the incident that caused Brittney's arrest in the West Covina motel room but also her and Joseph's extended history of drug abuse and domestic violence while living in Arizona, matters that were then at issue in the custody proceedings in Arizona involving Aiden's siblings.

As discussed, it is for the juvenile court in the first instance to hold an evidentiary hearing and to evaluate witness credibility, resolve conflicts in the evidence and make the factual findings necessary to determine whether Arizona was Aiden's home state in August 2014 when the dependency petition was filed and, if not, whether California could properly exercise subject matter jurisdiction under section 3421, subdivision (a)(2). (See § 3425; *Cristian, supra*, 224 Cal.App.4th at pp. 1100-1101.) Accordingly, we vacate the court's August 8, 2016 order terminating Brittney and Joseph's parental rights and remand

---

[11]  We acknowledge that the required evaluation of UCCJEA subject matter jurisdiction as of August 2014 could result in decisions that lead to Aiden's removal from the supportive home of a loving relative who is prepared to adopt him.  That is the unfortunate consequence of the failure to identify and address the issue of jurisdiction at the appropriate early point in the dependency proceedings.

the matter for the juvenile court to proceed in conformity with the requirements of the UCCJEA.

## DISPOSITION

The August 8, 2016 order terminating Brittney and Joseph's parental rights is vacated, and the cause remanded for the juvenile court to hold an evidentiary hearing to determine whether it properly exercised subject matter jurisdiction under the UCCJEA and thereafter to proceed in conformity with the procedural requirements of the UCCJEA.  If the court concludes jurisdiction was properly exercised without further action required, the order terminating parental rights may be reinstated.

PERLUSS, P. J.

We concur:

ZELON, J.

SEGAL, J.