Filed 5/13/22  In re S.M. CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re S.M., a Person Coming Under the Juvenile Court Law. | C093716 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, | (Super. Ct. No. STK-JD-DP-2020-0000296) |
| Plaintiff and Respondent, | |
| v. | |
| T.M., | |
| Defendant and Appellant. | |

T.M., mother of the minor (mother), appeals from the juvenile court's jurisdictional and dispositional orders.  (Welf. & Inst. Code, §§ 300, 395.)[1]  She asserts the juvenile court (1) lacked subject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), and (2) erred in delegating visitation and in

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

making a finding of reasonable services. We need not address mother's second contention because the juvenile court did not properly comply with the UCCJEA. We will reverse the juvenile court's jurisdictional and dispositional orders and remand for further proceedings.

BACKGROUND

The 14-year-old minor came to the attention of the San Joaquin County Human Services Agency (Agency) in August 2020 when mother, having methamphetamine in her possession, drove with the minor from Utah to California to meet up with mother's former boyfriend, B. Mother and B. met at a motel and used the methamphetamine while requiring the minor to sleep in the car all night. Mother reportedly had been using methamphetamine for the past four to five months.

Later, mother and B. got into an argument while driving in a car in which the minor was a passenger. Mother tried to jump out of the moving car, attempted to strangle the minor, and then attempted suicide by ingesting pills. B. contacted law enforcement and mother was transported to the hospital where she remained for several days. The minor reported that it was mother's second overdose in four months. According to the minor, mother had been using drugs for a long time and would become argumentative, making the minor feel very unsafe and uncomfortable while in mother's care. The minor stated she did not want to drive back to Utah with mother and was scared for her life because mother was unstable and not safe to be around.

The minor informed the social worker that she and mother lived in Utah but had been without housing for more than three months. The minor traveled with mother to California to visit mother's boyfriend, and she slept in the car alone for two nights during the visit. She and mother also slept in a Walmart parking lot for two nights because mother did not have money for a motel. The minor was afraid to go with mother once mother was released from the hospital. The minor was staying with B., but mother advised the minor she might have to go live with her father, M., who lived in

Pennsylvania and was a convicted felon and a drug addict. The minor did not want to live with M. because he had been physically abusive to her in the past. She also did not want to go to a children's shelter because she could not take her dog with her. The minor was subsequently taken into protective custody.

The social worker spoke with the minor's 16-year-old brother, K. He was living with his girlfriend's parents, who were trying to obtain legal guardianship over him due to mother's transient lifestyle and drug use. K. stated mother had unchecked mental health issues that affected her ability to maintain a job. He stated mother used drugs and, due to her behavior, they had been evicted from their home in Utah.

The maternal aunt, who lived in North Carolina, reported that mother wasted an inheritance on drugs and, after mother was evicted from her home, had been sleeping in different hotels and Walmart parking lots and begging for food. The maternal aunt said mother was suicidal and the minor was not safe with her.

The minor's father stated he had not seen the minor in quite some time. After mother was evicted, mother contacted him requesting money. Father said he was sending money to mother twice a week and he was not surprised mother was using drugs. He stated mother would not let him talk to the minor but that he would love to have the minor placed with him. However, the minor told father she would prefer to stay with the maternal aunt in North Carolina.

On August 19, 2020, the Agency filed a dependency petition on behalf of the minor pursuant to section 300, subdivisions (a), (b), (c), and (g), alleging mother's physical and emotional abuse of the minor and her failure to protect the minor due to her substance abuse, untreated mental health issues, and housing instability, and further alleging father's substance abuse issues and his failure to provide for the physical or emotional needs of the minor. The juvenile court ordered the minor detained in out-of-home placement. The juvenile court confirmed the minor's birthdate, found the minor was a resident of San Joaquin County, and ordered out-of-county placement. The

juvenile court further ordered that the minor was not to leave California without court approval. The juvenile court suspended mother's visitation to allow time for minor's counsel to meet with the minor.

At the contested jurisdiction hearing on October 27, 2020, after being informed that mother had returned to Utah, the juvenile court denied mother's request for a continuance. The juvenile court again found the minor was a resident of San Joaquin County and sustained the allegations in the petition as modified in court. The juvenile court granted the Agency's request for an Interstate Compact on the Placement of Children (ICPC) regarding potential placement with the maternal aunt in North Carolina.

The December 2020 disposition report reflected mother's mailing address in Utah. Mother reported a family history of mental health issues and substance abuse. She stated she had been on medications such as Prozac, had been in counseling her entire life, and was last prescribed psychotropic medications in 2017 or 2018. Mother also reported a previous suicide attempt when she was a young teen. Mother stated she had been using methamphetamine for approximately six years. She also acknowledged using some cocaine. She stated she started drinking alcohol seven months ago and she drank daily because everything was "falling apart" due to COVID, and because they had been evicted from their home and she did not have a job. Mother stated she came to California from Utah to see her ex-boyfriend but the minor was removed from her care. It was mother's intent to remain in Utah.

The minor was doing well in her foster placement and spoke openly with her foster mother about her family circumstances and what led to her removal from mother's care. The minor did not wish to participate in counseling, was unwilling to have contact with mother, and had no desire to return to mother's care. She wanted to live in North Carolina with the maternal aunt who was being considered for placement. According to the report, there had been no visitation between the minor and the parents as the minor did not want to visit or have contact with either parent and because mother lived in Utah

4

and father lived in Pennsylvania. The juvenile court authorized the Agency to arrange visitation in the event the minor changed her mind. The Agency contacted the child welfare agency in Utah in an effort to secure reunification services for mother. Mother indicated she would waive services but had yet to sign a waiver.

Mother appeared for the December 9, 2020 disposition hearing. She informed the juvenile court that she wanted the minor placed with the maternal aunt in North Carolina and she did not want to live in California. Following an assessment, it was determined that mother needed a residential drug treatment program. The juvenile court ordered the Agency to identify an appropriate program in Utah.

At the continued disposition hearing on December 16, 2020, the parties informed the juvenile court that a residential treatment facility had been located in Utah. The juvenile court ordered mother into drug court. Mother subsequently stated she did not want to enter a residential treatment facility and requested a contested hearing on the matter despite having submitted on disposition. The juvenile court denied the request. The disposition hearing was continued.

Mother appealed the juvenile court's October 27, 2020 jurisdiction order and its December 9, 2020, and January 6, 2021 orders continuing the disposition hearing. The appeal was dismissed.

On February 16, 2021, at the continued disposition hearing, the juvenile court ordered continued out-of-home placement of the minor and that reunification services be provided to mother.

On March 10, 2021, mother filed a notice of appeal from the juvenile court's August 20, 2020, October 27, 2020, December 9, 2020, January 6, 2021, and February 16, 2021 orders.

5

Mother contends, for the first time on appeal, that the juvenile court lacked subject matter jurisdiction because California was not the minor's home state under the UCCJEA.

The Agency argues mother forfeited her claim for failure to raise it below (*In re J.W.* (2020) 53 Cal.App.5th 347, 352 (*J.W.*)) and, in any event, the UCCJEA does not override the juvenile court's ability to take jurisdiction over the minor under section 300 related to an incident that takes place in California, where fundamental jurisdiction over dependency cases is governed by section 300.

" 'The UCCJEA is the exclusive method in California to determine the proper forum in child custody proceedings involving other jurisdictions.' [Citation; see also [Fam. Code,] § 3421, subd. (b) [[Fam. Code,] § 3421, subd. (a) 'is the exclusive jurisdictional basis for making a child custody determination by a court of this state'].) 'A dependency action is a " 'child custody proceeding' " subject to the UCCJEA.' [Citation.] '[A]s with any statute, interpretation of the UCCJEA is a question of law we review de novo.' [Citation.]" (*J.W., supra*, 53 Cal.App.5th at p. 355.)

In *J.W., supra,* 53 Cal.App.5th 347, the father, a Louisiana resident, raised a jurisdictional challenge from the order terminating his parental rights for the first time on appeal and without any evidence of a competing custody order from Louisiana. (*Id.* at pp. 355, 362.) As the appellate court explained, " 'A lack of fundamental jurisdiction is " ' " ' "an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties." [Citation.]' " ' " ' " (*Id.* at p. 356.) According to the court, the UCCJEA is a mandatory rule that "governs which state is to entertain a dependency case" but does not regulate the juvenile court's fundamental jurisdiction and thus can be forfeited by a party's failure to raise it below. (*Id.* at p. 352; see *id.* at pp. 355, 365.) The court concluded the father's claim that the juvenile court lacked

UCCJEA jurisdiction could not be raised for the first time on appeal and the issue had therefore been forfeited. (*Id.* at p. 367.)

We acknowledge the holding in *J.W., supra*, 53 Cal.App.5th 347. However, the case before us is in a different procedural posture. Whereas the father's parental rights were terminated in *J.W.*, here, mother retains her parental rights, challenging only the jurisdictional and dispositional orders. Were we to determine mother forfeited her UCCJEA claim for failure to raise it below, mother would not be precluded from raising the issue in the juvenile court, thus requiring the juvenile court to make the appropriate inquiries regarding the proper venue for the case. In the interest of preserving judicial resources, we exercise our discretion to consider mother's UCCJEA claim despite her failure to raise it in the juvenile court.

Under the UCCJEA, the juvenile court must determine whether California is the "home state" of the minor prior to asserting anything other than temporary emergency jurisdiction. (Fam. Code, §§ 3402, subd. (g), 3421, subd. (a)(1), 3424, subd. (a).) Family Code section 3421, subdivision (a) confers jurisdiction on a California court "only if any of the following are true:

"(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.

"(2) A court of another state does not have jurisdiction under paragraph (1), or a court of the home state of the child has declined to exercise jurisdiction on the grounds that this state is the more appropriate forum under [Family Code] [s]ection 3427 or 3428, and both of the following are true:

"(A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.

7

"(B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

"(3) All courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under [Family Code] [s]ection 3427 or 3428.

"(4) No court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3)." (*In re Marriage of Sareen* (2007) 153 Cal.App.4th 371, 377-378.)

"[Family Code] [s]ection 3402, subdivision (g), provides the definition for the term 'home state' as used in section 3421. ' "Home state" means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. . . . A period of temporary absence of any of the mentioned persons is part of the period.' ([Fam. Code,] § 3402, subd. (g).)" (*In re Marriage of Sareen, supra*, 153 Cal.App.4th at p. 378.)

Based on the social worker's reports and the minor's statements, mother and the minor had been in California a matter of days when the dependency petition was filed. Although the juvenile court properly exercised temporary emergency jurisdiction (Fam. Code, § 3424, subd. (a)),[2] it was thereafter required to act in accordance with the UCCJEA before making anything other than temporary orders. It appears from this record that the UCCJEA was never addressed by either the parties or the juvenile court. We therefore remand the matter for the juvenile court to determine if California is the minor's home state for purposes of the UCCJEA. "[I]f the court is aware that another

---

[2] Family Code section 3424, subdivision (a) provides: "A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to, or threatened with, mistreatment or abuse."

state (or foreign country) qualifies as the child's home state, the California court must contact the home state court to give it an opportunity to decide whether to exercise its home state jurisdiction." (*In re Aiden L.* (2017) 16 Cal.App.5th 508, 517-519; see Fam. Code, §§ 3410, 3421, subd. (a)(1)-(4), 3422, 3426-3429.)  We will reverse and remand for further proceedings to comply with the requirements of the UCCJEA.

## DISPOSITION

The juvenile court's jurisdictional and dispositional orders are reversed. The matter is remanded to the juvenile court to conduct further proceedings consistent with this opinion.

                                   _____/S/_____
                                   MAURO, J.

We concur:

_____/S/_____
RAYE, P. J.

_____/S/_____
KRAUSE, J.

9