Filed 4/18/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re L.C. et al., Persons Coming Under the Juvenile Court Law. | B322778 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>M.C.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. Nos. 20CCJP02608A–B) |

APPEAL from orders of the Superior Court of Los Angeles County, Ashley Price, Judge Pro Tempore.  Conditionally reversed with directions.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Interim County Counsel, Kim Nemoy, Assistant County Counsel, and Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

# I. INTRODUCTION

M.C. (mother) appeals from the termination of parental rights as to two of her children (the children) under Welfare and Institutions Code section 366.26. She contends that the juvenile court failed to determine whether it had jurisdiction over the children under the Uniform Child Custody Jurisdiction and Enforcement Act (the UCCJEA; Fam. Code,[1] § 3400, et seq.). The Los Angeles County Department of Children and Family Services (the Department) responds that by failing to raise the issue below, mother forfeited her right to raise it on appeal; alternatively, the Department argues that substantial evidence supports the court's assertion of jurisdiction in this case.

Mother also contends the juvenile court and the Department failed to comply with the inquiry requirements of the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and related California statutes (Welf. & Inst. Code, § 224 et seq.). The Department does not oppose a conditional remand with instructions to conduct a limited ICWA inquiry.

We conclude the forfeiture doctrine does not bar mother's challenge to the juvenile court's compliance with the UCCJEA and the error requires conditional reversal of the parental rights termination orders with directions to the court to undertake the process that the UCCJEA requires. This disposition will permit mother to raise the unopposed ICWA arguments she makes in this appeal.

---

[1] Further statutory references are to the Family Code unless otherwise stated.

2

## II.  PROCEDURAL HISTORY

In May 2020, the Department filed a dependency petition under Welfare and Institutions Code section 300 subdivisions (b)(1) and (b)(2) alleging mother was unable to care for the children because of her substance abuse, mental and emotional problems, and failure to take psychotropic medications as prescribed.  The children were one and five years old.[2]  The whereabouts of their respective fathers remained unknown throughout the dependency proceedings.  The children initially remained in mother's custody.

In July 2020, the juvenile court denied a request to detain the children after an incident during which the younger child consumed bleach that mother was using to clean.  The court, however, placed conditions on the children's continued placement with mother.

In September 2020, the juvenile court granted the Department's request to detain the children without notice to mother based on concerns about mother's continuing lack of compliance with court orders and her deteriorating mental health.  The court placed the children with a caregiver.

At the November 2020 jurisdiction and disposition hearing, the juvenile court sustained the petition and ordered monitored visits and reunification services for mother.  A year later, the court terminated mother's reunification services.  At the June 2022 Welfare and Institutions Code section 366.26 hearing, the

---

[2]     The Department reports refer to two other children, but they are not part of the current dependency case.

court terminated parental rights to the children.  Mother timely filed a notice of appeal.

## III.  DISCUSSION

A.    *The UCCJEA*

1.    Background

Mother and the children first came to the Department's attention in March 2020.  During an interview with a Department social worker, mother stated that she was born in Georgia, moved to Florida in 2013, and then to Texas.  The older child was born in Texas in 2014 and the younger child was born there in 2019.  Mother claimed that she continued to live in Texas until December 2019, when she fled to Arizona for a few months to escape an abusive relationship and then from there moved to San Diego and then to Los Angeles.  When the social worker told mother that her timeline did not make sense, she changed her story explaining that she only passed through Arizona.

On January 30, 2020, the San Diego County Health and Human Services Agency (the San Diego Agency) received a referral regarding the family after mother tested positive for amphetamine while the children were in her care.  Mother told hospital staff that she was visiting San Diego from Florida and that she intended to return to Florida in a few days.  The San Diego Agency closed its investigation because mother no longer resided in San Diego.

4

Mother denied neglecting or abusing the children and advised that the only other child welfare case she had was in Texas in April 2019, when the younger child was born prenatally exposed to methamphetamine.  According to mother, she had completed all her required classes and the Texas case was closed.

When the Department filed its dependency petition and detention report in May 2020, it did not ask the juvenile court to make any findings under the UCCJEA, despite the reported facts concerning mother's recent out-of-state residence and the child welfare case in Texas.  An addendum report filed the same day, however, did include a bullet-point list of items needing further investigation, including four entries related to possible child welfare proceedings in other states.  The first of the four entries was "UCCJEA – Texas and Arizona," and the remaining three entries were to investigate "CPS and criminal history in" Texas, Arizona, and Florida.

There is no indication in the record that the Department or the juvenile court inquired into the existence of child welfare or custody proceedings in Texas, Arizona, or Florida.  The record also reveals no reason to believe the court undertook the jurisdictional analysis required by the UCCJEA, which we next discuss.

2.      The Statutory Scheme

The UCCJEA is a carefully crafted statutory scheme—enacted not just by California but also by 48 other states

(excluding only Massachusetts)[3]—to determine the appropriate forum for child custody proceedings and avoid conflicting state child custody orders.  (*In re R.L.* (2016) 4 Cal.App.5th 125, 136 ["The UCCJEA is designed to avoid jurisdictional conflicts between states and relitigation of custody decisions, promote cooperation between states, and facilitate enforcement of another state's custody decrees"]; *In re Jaheim B.* (2008) 169 Cal.App.4th 1343, 1348 ["The purposes of the UCCJEA in the context of dependency proceedings include avoiding jurisdictional competition and conflict, promoting interstate cooperation, litigating custody where child and family have closest connections, avoiding relitigation of another state's custody decisions, and promoting exchange of information and other mutual assistance between courts of other states"]; see also *In re Marriage of Nurie* (2009) 176 Cal.App.4th 478, 497 ["[C]oncurrent assertion of jurisdiction by more than one court was one of the chief problems that led to the enactment of the UCCJEA.  The absence of a specific provision for continuing jurisdiction had 'caused considerable confusion,' with conflicting judicial interpretations and 'a loss of uniformity among the States.' [Citations.]"].)  The UCCJEA applies to dependency proceedings (§ 3402, subd. (d); *In re Aiden L.* (2017) 16 Cal.App.5th 508, 516), and is the exclusive method for determining the proper forum in child custody proceedings involving other jurisdictions (§ 3421, subd. (b); *In re Aiden L., supra*, 16 Cal.App.5th at p. 516).

---

[3]  National Conference of Commissioners on Uniform State Laws, Uniform Child Custody Jurisdiction and Enforcement Act (1997) Editors' Notes.

The Family Code provision implementing the UCCJEA with which we are concerned is section 3421. It provides, in relevant part:

"(a) Except as otherwise provided in Section 3424, a court of this state has jurisdiction to make an initial child custody determination only if any of the following are true:

"(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.

"(2) A court of another state does not have jurisdiction under paragraph (1), or a court of the home state of the child has declined to exercise jurisdiction on the grounds that this state is the more appropriate forum under Section 3427 or 3428, and both of the following are true:

"(A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.

"(B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

"(3) All courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 3427 or 3428.

7

"(4) No court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3)."

These four interrelated scenarios that permit a court in California (and, reciprocally, in any of the other states that have enacted the same scheme) to make a child custody determination have been helpfully clarified and summarized by case law: "California may assume jurisdiction to make an initial child custody determination only if any of the following apply: California is the child's 'home state,' meaning the state in which the child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the child custody proceeding was commenced (§§ 3421, subd. (a)(1), 3402, subd. (g)); a court of another state does not have jurisdiction because it is not the child's home state (§ 3421, subd. (a)(2)); a court of the child's home state has declined to exercise jurisdiction on the ground California is the more appropriate forum (*ibid.*); all courts having jurisdiction have declined to exercise jurisdiction on the ground California is the more appropriate forum (§ 3421, subd. (a)(3)); or no other state has jurisdiction under the foregoing tests (§ 3421, subd. (a)(4))."[4] (*In re A.M.* (2014) 224 Cal.App.4th 593,

---

[4]    A court without jurisdiction under section 3421 subdivision (a) may still exercise temporary emergency jurisdiction. (*In re Cristian I.* (2014) 224 Cal.App.4th 1088, 1097; *In re Gino C.* (2014) 224 Cal.App.4th 959, 965.) "A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child . . . is subjected to, or threatened with, mistreatment or abuse . . . ." (§ 3424, subd. (a).) The juvenile court, however, "may not address the

598; see also *In re Aiden L., supra*, 16 Cal.App.5th at p. 518 ["A child's home state has priority over other jurisdictional bases"].)

When it is clear some jurisdiction other than California is the home state of the child in question, efforts to consult with the court in that jurisdiction are required under the UCCJEA. (*In re Aiden L., supra*, 16 Cal.App.5th at pp. 518–519.) Similarly, where the information before a juvenile court objectively suffices to raise a genuine question about whether another jurisdiction is the child's home state, a juvenile court must obtain additional information as necessary to make a home state determination— and is empowered to contact the court in the other jurisdiction to that end. (§ 3410 ["A court of this state may communicate with a court in another state concerning a proceeding arising under [the UCCJEA]"]; *In re Aiden L.*, *supra*, 16 Cal.App.5th at p. 523 ["it is for the juvenile court in the first instance to hold an evidentiary hearing and to evaluate witness credibility, resolve conflicts in the evidence and make the factual findings necessary to determine whether Arizona was Aiden's home state in August 2014 when the dependency petition was filed"]; cf. § 3426, subd. (b) ["[A] court of this state, before hearing a child custody

---

merits of the dependency petition or otherwise make a final child custody determination until it properly asserts jurisdiction under the nonemergency jurisdiction provisions of the UCCJEA." (*In re Aiden L., supra*, 16 Cal.App.5th at p. 518; *In re Gino C., supra*, 224 Cal.App.4th at pp. 965–966.) A court exercising emergency jurisdiction under section 3424 is required to contact and provide notice to another state's court to determine whether the other state wishes to assert jurisdiction under section 3421. (*In re Aiden L., supra*, 16 Cal.App.5th at pp. 518–519; *In re R.L., supra*, 4 Cal.App.5th at pp. 142–143.)

proceeding, shall examine the court documents and other information supplied by the parties pursuant to [s]ection 3429. If the court determines that a child custody proceeding has been commenced in a court in another state having jurisdiction substantially in accordance with this part, the court of this state shall stay its proceeding and communicate with the court of the other state"].)

### 3. Forfeiture

The Department suggests that the juvenile court was not obligated to pursue any UCCJEA inquiry because mother's attorney did not object to the court's exercise of jurisdiction on that ground. The Department would have us hold that the UCCJEA issue is forfeited for that reason, relying on *In re J.W.* (2020) 53 Cal.App.5th 347, in which the Court of Appeal found inapplicable the rule that bars forfeiture of "fundamental jurisdiction" issues. According to the court in *In re J.W.*, the jurisdiction conferred by the UCCJEA is not "fundamental." (*Id.* at p. 355 ["Forfeiture would not apply if the UCCJEA provisions governing jurisdiction implicated the courts' fundamental jurisdiction, but, as we explain, they do not."].)

In our view, *In re J.W., supra*, 53 Cal.App.5th 347 does not settle the matter because its analysis is focused only on the answer to a limited question. Even if it is true that the UCCJEA does not concern issues of fundamental jurisdiction that cannot be forfeited, *In re J.W.* says nothing about whether there are *other* reasons why the forfeiture doctrine should not apply to the UCCJEA issue raised in this appeal. As we next explain, there are several such reasons—chief among them the purpose of

10

forfeiture rules generally, the comity-driven purpose of the UCCJEA, and the comprehensive statutory scheme that our Legislature enacted when adopting the UCCJEA.

The forfeiture doctrine provides that a reviewing court will ordinarily decline to consider a challenge to a ruling if an objection to the ruling was not made in the trial court. Our Supreme Court has explained the purpose of the doctrine is to encourage parties to bring errors to the attention of the trial court so that they may be corrected. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293; accord, *In re Sheena K.* (2007) 40 Cal.4th 875, 881.) Our Supreme Court has also cautioned, however, that the forfeiture doctrine is "not automatic" (*In re S.B.*, *supra*, 32 Cal.4th at p. 1293) and should not apply for a variety of reasons (see, e.g., *In re Sheena K.*, *supra*, 40 Cal.4th at p. 889 [pure question of law]; *In re S.B.*, *supra*, 32 Cal.4th at p. 1293 [important legal issue]; see also *In re Frank R.* (2011) 192 Cal.App.4th 532, 539 [conflict with due process]). In addition to these reasons, we identify another: As a doctrine of largely judicial creation (see *People v. Butler* (2003) 31 Cal.4th 1119, 1130 (conc. opn. of Baxter, J.)), forfeiture should not apply when it would be incompatible with the fundamental purposes of a statutory scheme.

Here, the usual benefit from the application of the forfeiture doctrine—to encourage *parties* to bring issues to the trial court—would not be conferred under the facts of this case. The periods where mother and the children were recently living out-of-state were apparent on the face of the Department's reports—indeed, the UCCJEA was expressly identified as a matter for "further investigation." Thus, although the Department or mother could have done more to urge the juvenile

11

court to undertake the UCCJEA process, the objective facts supporting the need for such a process were readily apparent from the record. Because the UCCJEA process often involves direct court-to-court consultations in which the parties do not participate, the statute places a greater degree of focus on the actions a court itself must undertake, rather than actions required of the parties. The independent obligations imposed by the UCCJEA on a court making custody decisions support the imposition of a corollary duty to be attuned to UCCJEA issues even without proactive advocacy by litigants.

Furthermore, the costs of holding the UCCJEA issue here forfeited are substantial. As we have explained, the comity-driven purpose of the UCCJEA is to avoid jurisdictional conflict between states, promote interstate cooperation, litigate custody where the children and family have the closest connections, avoid relitigation of another state's custody decisions, and facilitate enforcement of another state's custody decrees. (*In re R.L.*, *supra*, 4 Cal.App.5th at p. 136.) These are important goals, and applying a forfeiture rule risks undermining them. If applied broadly—including in other states that may also be moved to adopt a forfeiture rule (but see, e.g., *Nemes v. Tutino* (N.Y. App. Div. 2019) 173 A.D.3d 16, 23 [UCCJEA issue not waivable]; *J.M.R. v. J.M.* (Pa. Super. Ct., 2010) 1 A.3d 902, 908 [rejecting waiver and addressing UCCJEA issue raised for the first time on appeal])—the number of jurisdictional conflicts and potentially inconsistent judgments among states would rise and, in many instances, be left to turn only on whether an attorney had the presence of mind to object (or a perceived strategic interest in objecting) during a particular hearing. As our Supreme Court has observed in another context, where a statute protects the

interests of other sovereigns that are separate and distinct from the interests of parents, "'the parents' inaction does not constitute a waiver or otherwise preclude appellate review.'" (*In re Isaiah W.* (2016) 1 Cal.5th 1, 13.)

Moreover, holding the UCCJEA issue forfeited under these circumstances would be inconsistent with the ""'the context of the statute as a whole and the overall statutory scheme . . . .'"" (*In re Isaiah W., supra*, 1 Cal.5th at p. 13.) Section 3421 delineates four bases for the exercise of a court's jurisdiction to make an initial child custody determination. The statute emphasizes that a court may make an initial child custody determination "only" if one or more of these four statutorily specified criteria are satisfied. We are confident the Legislature did not go to the trouble of adopting such a carefully designed and comprehensive scheme only to permit courts, under the auspices of forfeiture, effectively to add a fifth, unspecified category to the statute, one which permits a court to exercise jurisdiction regardless of the location of the child's home state or the preferences of a foreign court simply because the parties before it do not object.[5]

We accordingly decline to hold that the UCCJEA issue in this case is forfeited because the parties did not object in the juvenile court. Instead, we proceed to analyze the issue on the merits, to the extent the record permits.

---

[5]    Because UCCJEA issues typically involve out-of-state parties and proceedings, we expect there will be cases in which all interested parties—and, indeed, the parties with an incentive to object—will not be before a juvenile court in this state to interpose a UCCJEA objection.

13

### 4. Conditional Reversal and Remand Is Required

According to mother, because the juvenile court did not investigate the possibility that Texas was the children's home state, all of the court's jurisdictional findings and subsequent orders must be reversed. The Department, while conceding that California is not the home state, counters that there was substantial evidence that *no* state was a "home state" under the UCCJEA because the children had not resided in any one place for the six months immediately prior to the commencement of dependency proceedings in California in May 2020. We believe neither party is correct.

A "home state" under the UCCJEA is "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding . . . . A period of temporary absence of any of the mentioned persons is part of the period." (§ 3402, subd. (g).) Here, there is evidence in the record that both children were born in Texas and resided there until December 2019, when the family left Texas and ultimately came to the attention of California authorities. Without a finding or inquiry about whether mother or either of the children's absence from Texas was temporary, there is no substantial evidence that there was "no home state" for the children.

We next consider the Department's contention that the juvenile court's error was harmless because (1) "Texas did not qualify as the children's home state, thus the juvenile court did not need to contact the Texas court;" and (2) "the evidence demonstrated there had been no dependency proceedings in Texas." Assuming for argument's sake that the error here is

14

amenable to harmlessness review, we do not agree the record sufficiently demonstrates that Texas was not the children's home state. Furthermore, mother's statement that the children had been the subject of dependency proceedings in Texas belies the Department's contention that there were no child welfare proceedings in Texas. Finally, to the extent the Department suggests that mother's statement concerning the closure of the proceedings in Texas is dispositive, the record does not reflect whether the courts of that state made any custody orders before or at the time the case was closed (if it was indeed closed, which we cannot determine on this record). Thus, the court's failure to determine whether it had jurisdiction under the UCCJEA cannot be deemed harmless in this case.

We disagree with mother, however, that unconditional reversal of all the juvenile court's prior orders is necessarily required. Because we have concluded that the UCCJEA issue is not forfeited for reasons independent of a "fundamental jurisdiction" analysis, we believe the appropriate course of action is to reverse the prior orders conditionally and to remand the matter with instructions to comply with UCCJEA procedures. (See, e.g., *In re A.M., supra*, 224 Cal.App.4th at pp. 599–600.)

B. *ICWA*

Mother next contends that the juvenile court's ICWA determination was not supported by substantial evidence because the Department did not ask one of three people identified by mother as the children's maternal grandmother about possible Indian ancestry. As we are conditionally reversing the parental rights termination orders and remanding the matter to the

15

juvenile court, mother can pursue the issue on remand informed, as appropriate, by the Department's concessions in this appeal.

## IV. DISPOSITION

The juvenile court's June 13, 2022, orders terminating parental rights to the children under Welfare and Institutions Code section 366.26 are conditionally reversed and the matter is remanded to permit the court to determine whether it has jurisdiction under the UCCJEA and for any other proceedings not inconsistent with this opinion. If the court on remand determines that it has jurisdiction over the children under the UCCJEA and considers and resolves any ICWA-related issues raised by mother, the orders terminating parental rights are to be reinstated. If the court determines that it does not have jurisdiction over the children under the UCCJEA, the court shall proceed as required by the UCCJEA, nullify the parental rights termination orders, and, as necessary, prior orders.


KIM, J.


I concur:



BAKER, Acting P. J.


16

MOOR, J., Concurring.

I agree with the majority's dispositional order conditionally reversing the June 13, 2022, orders terminating parental rights and remanding the matter to the juvenile court to address the issue of jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA; Fam. Code, 3400 et seq.).[1]

I write separately, however, to emphasize that the doctrine of appellate forfeiture is not incompatible with the UCCJEA statutory scheme. It is my view that a parent's failure to object in the juvenile court to the lack of compliance with the UCCJEA can result in forfeiture of that issue on appeal. (See *In re J.W.* (2020) 53 Cal.App.5th 347, 355, 367.) The UCCJEA does not place upon the juvenile court alone the burden to identify the appropriate forum for child custody proceedings and avoid conflicting state child custody orders. Parties to a child custody proceeding are obligated to provide the information necessary to determine jurisdictional issues and to bring possible conflicts with other state proceedings to the juvenile court's attention. (Fam. Code, § 3429.) Application of the forfeiture rule—and its purpose of "encourag[ing] parties to bring errors to the attention of the trial court, so that they may be corrected" (*In re S.B.* (2004) 32 Cal.4th 1287, 1293)—therefore facilitates compliance with, and the making of correct determinations under the UCCJEA.

---

[1] I also agree with the majority's resolution of the issue raised under the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and related California statutes (Welf. & Inst. Code, § 224 et seq.).

Nevertheless, the record here includes important reasons to exercise our discretion to hear the UCCJEA issue on the merits. Although the discretion to excuse forfeiture "must be exercised with special care" in dependency proceedings, because they "involve the well-being of children" and "considerations such as permanency and stability are of paramount importance" (*In re S.B.*, *supra*, 32 Cal.4th at p. 1293), where a juvenile court may have committed legal error on an issue of vital importance affecting the placement of a child, it may warrant relaxing the rule of forfeiture (*In re Alexandria P.* (2014) 228 Cal.App.4th 1322, 1348). This is not a case where mother remained silent about her connections to other states and where the need for investigation of other state proceedings went unnoticed by the Los Angeles County Department of Children and Family Services. Particularly where the fathers were never located, and therefore did not have an opportunity to participate, the UCCJEA issue is a significant one: there is at least a potential concern that another state has information about the absent fathers, or an interest in their relationship with one or both minors.

Therefore, I join the majority's conditional reversal of the termination orders and the remand order instructing the juvenile court to ensure compliance with the UCCJEA.


MOOR, J.


2