Filed 9/20/23 In re Theodore B. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re THEODORE B., a Person Coming Under the Juvenile Court Law. | B323495 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Los Angeles County Super. Ct. No. 22LJJP00255A |
|     Plaintiff and Respondent, | |
|     v. | |
| LAUREN G., | |
|     Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County. Robin R. Kesler, Juvenile Court Referee. Affirmed.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Stephen Watson, Senior Deputy County Counsel, for Plaintiff and Respondent.

————————————————

Lauren G. (mother) appeals the juvenile court's orders exercising jurisdiction over Theodore B. and removing him from her custody. Mother's appeal rests on Family Code[1] sections 3421 and 3427, which are part of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA, §§ 3400-3425). Mother did not raise the UCCJEA issues below.

Section 3421 sets forth the limited circumstances under which a California court "has jurisdiction to make an initial child custody determination." (*Id.*, subd. (a).) Mother argues that, in the face of evidence a different state may have had jurisdiction, the juvenile court erred in failing to conduct an evidentiary hearing to decide if it had jurisdiction. She contends jurisdictional challenges may be raised for the first time on appeal. We do not consider whether mother forfeited this argument by failing to raise it below, since any error by the juvenile court was harmless.

Section 3427 gives a juvenile court which has UCCJEA jurisdiction discretion to defer to the jurisdiction of a court of another state on grounds of inconvenient forum. An inconvenient forum claim is forfeited by failing to raise it below.

Accordingly, we affirm the juvenile court's orders.

## BACKGROUND

We limit our recitation of the background facts to those bearing on the juvenile court's UCCJEA jurisdiction.

Theodore is the son of mother and A.B. (father).

Mother and father met online in 2019 when mother was living in Texas and father was living in Kansas. Mother is from Texas, where her three other biological children (two daughters

---

[1] Undesignated statutory references are to the Family Code.

and a son) reside with family members other than mother. Father is from California but lived in various places due to his family's military background. Mother and father moved to Arizona together, where, in 2020, mother became pregnant.

Theodore was born in July 2021 in Arizona. He tested positive for marijuana at birth, resulting in a child welfare referral which was substantiated by Arizona social workers. The referral was closed in October 2021 without issuance of any family law orders pertaining to the family.

In early 2022, the family was evicted from their apartment in Arizona. They decided to move to California to live with paternal grandparents in Acton until they could get their own place. Father was attracted to California because he believed its laws afforded greater protections to fathers than Arizona laws. According to father, this was based on police in Arizona having told him he had no right to take Theodore to a room away from mother in the family home when mother was acting violently.

The family moved in with paternal grandparents in February 2022. Information reported by the Los Angeles County Department of Children and Family Services (the Department) includes no indication that the parents intended to return to Arizona when they left there. Upon arrival in California, mother got a job. Theodore was later enrolled in Medi-Cal.

A violent conflict between parents and paternal grandparents in May 2022 led to an investigation by the Department. In the course of this investigation, paternal grandmother showed the Department text messages between her and mother in which mother threatened to "leav[e] to Houston with Theo." Paternal grandmother told the Department she thought mother planned to move to Texas and reunite with the

3

father of her other son but did not have the money to leave. Paternal grandparents refused to help her in doing so.

The Department obtained from the juvenile court a protective custody warrant against mother in June 2022. The Department enforced the warrant by directing mother to leave the family home. Mother complied and moved out on June 22, 2022.

A few days later, the Department filed a petition with the juvenile court alleging Theodore was subject to the juvenile court's jurisdiction under Welfare and Institutions Code section 300. The petition included counts against both mother and father.

The juvenile court held a detention hearing in July 2022. In connection with that hearing, mother filed a notification of mailing address stating she had moved to Lancaster, California. Father's notice stated he was still living with paternal grandparents in Acton.

At the detention hearing, the juvenile court acknowledged off-record statements from counsel indicating the parents had not lived in California for the six months preceding the petition and (erroneously) that they moved from Texas. The court observed that this could implicate UCCJEA and directed the Department to "locate the appropriate court in Texas so we can reach out to see which state should have jurisdiction." The court later explained that it understood counsel had been incorrect and that the family had moved from Arizona. Mother confirmed this in her testimony to the court. The court did not revise its earlier order directing the Department to determine which court in Texas might be the "appropriate court" with which to address UCCJEA jurisdiction.

4

The Department filed a jurisdictional and dispositional report in mid-August 2022.  At the time, father and Theodore were still living in Acton.  However, mother's whereabouts were unknown.  When the Department visited her address in Lancaster, a person there said mother had packed her things and said she was leaving California to move "back home," but the person doubted this was true and believed mother was "probably somewhere around here."  The report described the family's child protection referral history in Arizona and stated there were "no known Family Law order[s] for this family."

The juvenile court adjudicated the dependency petition later in August 2022 without revisiting the question of UCCJEA jurisdiction.  It determined Theodore was subject to jurisdiction under Welfare and Institutions Code section 300, subdivision (b), based on the parents' history of domestic violence, substance abuse, and mental and emotional problems.

A few days later, based on the same evidence, the juvenile court ordered Theodore removed from mother pursuant to Welfare and Institutions Code section 361, subdivision (c), ordered him maintained with father (provided he remained with the paternal grandparents), and ordered services for the parents. In making its dispositional order, the juvenile court did not address the question of UCCJEA jurisdiction.

At no point in the proceedings below did mother, who was represented by counsel, argue the juvenile court lacked UCCJEA jurisdiction, or that it was under an obligation to investigate UCCJEA jurisdiction, or that California was an inconvenient forum.

5

Mother timely appealed from the juvenile court's August 2022 Welfare and Institutions Code section 300 jurisdictional order and its September 2022 dispositional order.

**DISCUSSION**

Mother describes her appeal as presenting just one issue, but she actually argues two. The first is whether the juvenile court erred by failing to conduct an evidentiary hearing to determine whether it had UCCJEA jurisdiction under section 3421. The second is whether it erred by failing to consider whether, if it had jurisdiction, to decline jurisdiction in favor of a more convenient forum (Arizona) under section 3427. We consider the first claim of error and conclude it was harmless. We deem the second claim forfeited and affirm.

1.    **Any Error in Failing to Make Jurisdictional Findings Under Section 3421 Was Harmless**

" 'The UCCJEA is designed to avoid jurisdictional conflicts between states and relitigation of custody decisions, promote cooperation between states, and facilitate enforcement of another state's custody decrees.' " (*In re Aiden L.* (2017) 16 Cal.App.5th 508, 516 (*Aiden L.*).) Nearly every state in the United States has adopted the UCCJEA. (See *In re L.C.* (2023) 90 Cal.App.5th 728, 735.)

Section 3421 prioritizes jurisdiction for dependency proceedings in a child's statutorily defined "home state," if any. (*Aiden L., supra,* 16 Cal.App.5th at p. 518.) The UCCJEA defines " '[h]ome state,' " in relevant part, as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. . . . A period of temporary absence of

6

any of the mentioned persons is part of the period." (§ 3402, subd. (g).)

The court of a state that is not a child's home state may exercise jurisdiction if, among other things, the child has no home state, or a court of the child's home state declines jurisdiction, if both (a) the child and at least one parent, or a person acting as a parent, "have a significant connection with th[e] state other than mere physical presence," and (b) substantial evidence is available in the state "concerning the child's care, protection, training, and personal relationships." (§ 3421, subd. (a)(2).) If this test is unsatisfied, additional grounds for asserting jurisdiction may apply but are not relevant here. (See *id.*, subd. (a)(3)-(4); *In re A.M.* (2014) 224 Cal.App.4th 593, 598.)

Mother claims the juvenile court erred in failing to conduct an evidentiary hearing to ascertain a basis for its jurisdiction under section 3421. In support, she cites *In re L.C.*, *supra*, 90 Cal.App.5th 728, which holds that "where the information before a juvenile court objectively suffices to raise a genuine question about whether another jurisdiction is the child's home state, a juvenile court must obtain additional information as necessary to make a home state determination . . . ." (*Id.* at p. 737.) To be clear, mother does not contend the juvenile court lacked jurisdiction; she argues only that it failed to follow the proper procedure to ascertain it.

The Department argues mother forfeited this argument by failing to raise it below. The court in *In re J.W.* (2020) 53 Cal.App.5th 347 held that an objection based on lack of UCCJEA jurisdiction can be forfeited because the UCCJEA does not implicate a juvenile court's "fundamental jurisdiction." (*In re J.W.,* at p. 355.) Mother argues *In re J.W.* was wrongly decided,

7

and, in any event, we should exercise our discretion to consider her appeal on the merits like the court did in *In re L.C., supra,* 90 Cal.App.5th 728.  We do not consider whether mother could or did forfeit her appeal as to UCCJEA jurisdiction under section 3421 because it is obvious any error by the juvenile court was harmless.

Failure to "comply with the procedural requirements of the UCCJEA is subject to harmless error analysis.  [Citations.]  Before any judgment can be reversed for ordinary error, it must appear that the error complained of 'has resulted in a miscarriage of justice.'  (Cal. Const., art. VI, § 13.)  Reversal is justified 'only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' "  (*In re Christian I.* (2014) 224 Cal.App.4th 1088, 1098-1099.)  The harmless error standard requires the appellant to show "merely a *reasonable chance*" of a more favorable outcome, which is "more than an *abstract possibility*."  (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715.)

Here, the record does not demonstrate a reasonable chance that, if the juvenile court had made UCCJEA findings, it would have concluded it lacked UCCJEA jurisdiction.

The Department concedes California is not Theodore's home state because he did not live in California for the six months preceding the commencement of the juvenile court proceedings.  Mother agrees.

But mother disagrees with the Department that no other state is Theodore's home state.  Mother does not contend that Arizona is Theodore's home state.  Mother contends it is *possible*

8

Arizona is his home state to the extent the family's move to California began only a "temporary absence" from Arizona. Mother does not dispute that, to the extent the absence was not temporary, and Theodore had no home state, the juvenile court would have jurisdiction under section 3421, subdivision (a)(2). Mother's section 3421 argument requires that she show there was a reasonable probability the juvenile court would have found the family's move to California was a "temporary absence" from Arizona if it had considered the question. Mother has made no such showing.

What constitutes a "temporary absence" is not defined in the UCCJEA. California Courts of Appeal have not uniformly adopted a test to determine when an absence is "temporary." One considered only the duration of an absence—almost 17 months—to conclude it would be a "stretch of imagination" to find such a long absence "temporary." (*In re Marriage of Sareen* (2007) 153 Cal.App.4th 371, 381.) Another looked only to the parents' intent to conclude the child's time outside California satisfied "any applicable standard" for " 'temporary absence,' " citing three out-of-state cases: two that focused on parental intent and a third that applied a totality of the circumstances approach. (*In re Marriage of Nurie* (2009) 176 Cal.App.4th 478, 493, fn. 12.) Another cited *Nurie* and said courts must consider parents' intentions, "as well as other factors relating to the circumstances of the child's or family's departure," when determining whether an absence is temporary. (*Aiden L.*, *supra,* 16 Cal.App.5th at p. 518.) The intent analysis focuses on the parents' intention at the time of departure, which may be informed by their behavior subsequent to that departure and remaining ties to the old state. (See *Nurie*, at p. 493, fn. 12

9

[assessing nature of absence based on circumstances when it began]; *Aiden L.*, at p. 521 [analysis should consider reasons for leaving old state, plans upon arriving in new state, and familial and legal ties to the old state].)

Here, whatever standard applies, the record shows no reasonable prospect that the juvenile court would have concluded the family's absence from Arizona was temporary, if it had considered that question. Mother cites no evidence that the family left Arizona with the intention of returning. The family was evicted from their home in Arizona. They went to California to live with paternal grandparents because they could not afford to live on their own in Arizona. They hoped that, after staying with paternal grandparents for a while, they could save enough money to get their own place. Upon arrival in California, mother took a job. Thus, at the time of their arrival in California, by all appearances they intended to remain there.

Their plans to live together as a family in California quickly fell apart. Father explained that clashes between mother and paternal grandparents and mother's refusal to get mental health help brought about the prospect of "eviction" by paternal grandparents. Father's use of this term implies the family considered paternal grandparents' home to be their home and not a place they were just visiting. Indeed, they paid rent to stay there. With their housing uncertain, limited income, and the high cost of living, the family considered leaving California together. But there is no indication they planned to return together to Arizona.

To the contrary, father deliberately left Arizona to protect his paternal rights. And mother harbored a desire to return to Texas, not Arizona.

10

### 2. Mother Forfeited Any Claim of Error Pertaining to the Juvenile Court's Failure to Conduct an Inconvenient Forum Analysis

Mother argues that, even if Theodore has no home state, the juvenile court was still obligated to consider whether California or Arizona "should" exercise jurisdiction under the UCCJEA. We decline to consider this argument on forfeiture grounds.

As noted above, mother does not dispute that, assuming Theodore had no home state, the juvenile court had jurisdiction under section 3421, subdivision (a)(2), because (A) Theodore "and at least one parent"—father—"have a significant connection with [California] other than mere physical presence"; and (B) "[s]ubstantial evidence is available in [California] concerning [Theodore's] care, protection, training, and personal relationships." She merely contends Arizona "arguably" also had jurisdiction, so the court was mandated to determine which state was the more appropriate forum. For this proposition, mother cites only section 3427.

As a preliminary matter, section 3427 does not support the proposition. Section 3427 is not mandatory. It *permits* a juvenile court to refrain from exercising jurisdiction *if* it determines it is an inconvenient forum. (*Id.,* subd. (a) ["[a] court of this state that has jurisdiction under this part to make a child custody determination *may* decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances . . . ." (italics added)].) The issue "*may* be raised upon motion of a party, the court's own motion or request of another court" (*ibid.*), none of which happened here.

11

But more importantly, section 3427 does not concern the *existence* of jurisdiction; it concerns only its *exercise*. It is premised on the juvenile court *having jurisdiction* and then considering whether to exercise that jurisdiction. (*Id.,* subd. (a).) Mother argued we were bound to consider her entire appeal, despite her failure to raise any of the issues below, because section 3421 implicates the juvenile court's "fundamental jurisdiction" (the contrary holding of *In re J.W., supra,* 53 Cal.App.5th at page 355 notwithstanding). This argument cannot apply to a claimed section 3427 error because, again, section 3427 presupposes jurisdiction under section 3421 exists. We decline to exercise our discretion to consider whether the juvenile court erred in not performing a nonmandatory inconvenient forum analysis because mother forfeited the issue by failing to raise it below.

## DISPOSITION

The juvenile court's jurisdictional and dispositional orders are affirmed.


GRIMES, J.


WE CONCUR:


STRATTON, P. J.



VIRAMONTES, J.

12